UNITED STATES of America, Appellee,

v.

Franklin TRUESDALE, Appellant.

No. 516, Docket 32057.

United States Court of Appeals Second Circuit.

Argued June 5, 1968.

Decided Sept. 17, 1968.

Arthur A. Munisteri, Pierre N. Leval, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., for appellee.

Phylis Skloot Bamberger, Anthony F. Marra, New York City, for appellant.

Before WATERMAN and FEINBERG, Circuit Judges, and ZAMPANO, District Judge.*

WATERMAN, Circuit Judge.

Appellant, tried before a judge sitting without jury, was found to have violated 21 U.S.C. §§ 173, 174 by selling 23.2 grams of heroin to a narcotics agent. He seeks a reversal of his conviction on two grounds, first that he did not receive a fair trial because of alleged governmental prejudicial misconduct in failing to produce a "special employee," and second that the trial judge required him to surrender his privilege against self-incrimination in order to provide a basis for requesting that the employee be produced. We affirm the conviction.

The government case may be briefly stated. On February 6, 1967 the appellant entered the Regent Bar between 9:30 and 10:00 P.M. with a "special employee" informant of the Narcotics Bureau. The informant, who had previously told Narcotics Agent Nicholas Navarro of the appellant's wish to sell illegally imported heroin, introduced the two men there, Navarro having arrived at the bar a few minutes earlier than appellant. Appellant and Agent Navarro then walked to a booth and sat down facing each other. The informant in turn took a position at the bar near the booth where a second Narcotics Agent, Charles Collins, was also seated.

Appellant and Navarro then had a conversation concerning the heroin to be sold, after which appellant handed Navarro a brown paper bag which the latter took to the men's room. There he tested the contents and determined them to be narcotics. Upon returning to the table, Navarro paid appellant $500. Appellant then rose and walked out of the bar with the special employee.

During the course of the trial in which both Navarro and Collins testified to the above facts, defense counsel made inquiries as to the availability of the informant and was told by the judge that "if he is here, he is available." At the close of the Government's case, the defense requested a recess so as to be able to confer with the informant. The Government objected to this request as premature in view of the evidence at that time and the court agreed. Defense counsel then willingly agreed to put the defendant on the stand in order to substantiate his need for the appearance of the informant.

The appellant testified that he had gone to the Regent Restaurant Bar with the informant whom he knew only as "Little Man" in order to purchase narcotics, and that it was Little Man who joined someone in a booth, allegedly to get the money for the purchase. Appellant further stated that he and Little

* Of the District of Connecticut, sitting by designation.

Man then went to a nearby restaurant to make the purchase and that Little Man alone went back to the Regent Bar, appellant proceeding to 115th Street where he was to meet Little Man later. Appellant denied ever having given a brown paper bag to Navarro or receiving $500 from him.

During the cross-examination of the appellant, the defense requested to know where the informant was. The Government replied that it did not know and that the informant was not under its control. At this point the court adjourned the trial in order to give the Government an opportunity to produce him; and upon its failure to do so additional adjournments were granted totaling some five weeks when it became apparent that decision should not be longer deferred. Agent Navarro was recalled to the stand and testified, to the court's complete satisfaction, that the Government had made diligent efforts to find the informant.[1] The Government then gave defense counsel the name and physical description of the special employee and agreed to notify defense counsel whenever he should be found so that he could be interviewed for the purpose of laying the foundation for a motion for a new trial. Thereupon, the defense, alleging that the Government had not met its burden of proving appellant guilty beyond a reasonable doubt, moved for an acquittal. This motion was denied and the court found the appellant guilty as charged.

■ Appellant claims his trial was prejudicially unfair because defense counsel had timely requested the production at trial of the special employee and had been misled as to his availability through misrepresentations made to defense counsel by government counsel, both before and during the trial, and by the failure of the Government to make any timely objection to revealing the informant's identity. Appellant contends that, being so misled, his own search for the informant was thereby delayed, and that this delay, so occasioned, prevented the defense from obtaining the witness and prejudicially deprived appellant of a fair trial. We do not agree. The trial judge was satisfied from the representations made to him by government counsel and from the agent's sworn testimony that the Government had made a conscientious effort to locate the informer during an intensive and extensive seven-week search. We are constrained to accept the trier's estimate of the situation and circumstances here present that an earlier search would have been equally fruitless. See United States v. Guerra, 334 F.2d 138, 142 (2 Cir. 1964). Though Roviaro v. United States, 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) commands that an informant's identity be disclosed when it is relevant and helpful to the defense, we pointed out in United States v. Russ, 362 F.2d 843, 844 (2 Cir. 1966) that "Indeed, ultimately, each case turns on its own 'peculiar circumstances.' 353 U.S. at 62 [77 S.Ct. 623]." Here, where the case was not tried to a jury and the informant's identity was eventually made known to the defense and a seven week search was conducted to find him while decision on the merits was deferred, we find no cause to overturn the conviction below.

The position we took in United States v. Roberts, 388 F.2d 646 (2 Cir. 1968) and that taken by the dissenting judge

---

1. When recalled Agent Navarro testified that the search for the special employee had begun two weeks prior to the commencement of the trial and had continued during the five weeks of adjournment. There were checks with local police authorities following an FBI lead that the informant was then in custody and there were interviews with and inquiries made of several other special employees both in New York and in Miami. A trip to Miami opened up a lead that the informant might be located through a Bridgeport, Connecticut connection, and an agent in Bridgeport was requested to follow that lead. The Bridgeport Police Department was also contacted and an effort was made to exhaust all possibilities in that city, it having been reported that the informant's wife or her parents lived in Bridgeport. The search of seven weeks turned up nothing.

in United States v. Cimino, 321 F.2d 509, 512 (2 Cir. 1963) are readily distinguishable from the present case. In the former the Government had failed to tell the defense that the informant was in custody and readily available; while in *Cimino* it appeared to the dissenting judge that there was a strong indication that the Government had not conducted a proper search for the informant such as was conducted here.

■ Though we dispose of appellant's contentions adversely to him, a further observation is in order. Though there is a conflict as to what was actually said between the Assistant United States Attorney and defense counsel prior to trial, it is clear that the Government withheld until after the conclusion of its case-in-chief that it did not wish to comply with the defense request that the special employee's identity be divulged and his availability be assured. If such is to be the Government's position in a prosecution the Government should object to the defense requests as soon as possible in order to prevent a misunderstanding such as apparently occurred here.

■ Appellant also claims that his testimony at trial was compelled in violation of his rights under the Fifth Amendment by the judge's ruling that he would not require the appearance of the special employee until some evidence was given to show that the appearance was necessary. Appellant's argument raises a potentially important question in light of the recent trend of Supreme Court cases stressing the importance to a defendant in a criminal case that he have a free and unfettered choice to assert the self-incrimination privilege. Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); Garrity v. State of New Jersey, 385 U.S. 493, 87 S. Ct. 616, 17 L.Ed.2d 562 (1967). See also Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964);

and Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

However, in the present case the record demonstrates that appellant was in no way coerced to testify, but that he did so voluntarily. The pertinent colloquy follows:

Mr. Moldow (Defense counsel): At this point, your Honor, I will request a moderate recess so I can confer with the special employee, who I understand is available.

Mr. Rooney (Assistant United States Attorney): I never told you the special employee was available. You told me that you were going to request that he be produced. I understood that, but I think any request for the identity of the special employee is premature at this time in view of the evidence.

\* \* \* \* \* \*

The Court: I am not persuaded that \* \* \* [the testimony of the special employee would be as material as that of the Narcotics Agents] from the content of the case up to this point. \* \* \* unless there are some bones upon which to put the flesh, I don't see how I can order a direction at this time.

Mr. Moldow: *I am perfectly willing to do it this way, your Honor.* My defendant, I believe, is prepared to testify and there is going to be a material variance as to what took place. \* \* \*

The Court: Then I can order the special employee to be brought in, but at this point I would be simply guessing and anticipating what you are going to do.

Mr. Moldow: Very well, your Honor. The defendant will take the stand in his own behalf.

Thus at no time did the defendant or his counsel claim that his Fifth Amendment *rights were being violated; nor did they* even hint that the defendant was reluctant to testify in his own behalf. From the quoted colloquy between court and counsel we can only conclude that the defendant's testimony below was voluntarily given and was in no way coerced by

the court's requirement that the defense introduce some evidence before it ordered the appearance of the informant. The appellant's Fifth Amendment claim, which he advances for the first time on appeal, is devoid of merit. Of course, we reserve ruling upon the proper course for the trial judge to have taken if the defendant had raised a timely objection to the ruling.

Conviction affirmed.