**UNITED STATES of America,**

v.

**Jack McCARTHY, James Plumeri, a/k/a Jimmy Doyle, Leonard Russo, and David Wenger, Defendants.**

**68 Cr. 467, 68 Cr. 477.**

United States District Court
S. D. New York.

Oct. 31, 1968.

J. Kenneth O'Connor, New York City, for defendant Jack McCarthy.

Maurice Edelbaum, New York City, for defendant James Plumeri; Philip R. Edelbaum, New York City, of counsel.

Gilbert S. Rosenthal, New York City, for defendant Leonard Russo.

Moses L. Kove, New York City, for defendant David Wenger.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, New York City, for United States of America; Paul K. Rooney, Asst. U. S. Atty., of counsel.

## OPINION

MacMAHON, District Judge.

Defendants are charged with conspiracies to bribe an officer of an employee pension benefit fund with intent to influence the officer's decisions respecting mortgage applications submitted to the fund. Each indictment covers a separate mortgage application. Defendant David

Wenger, an officer of the fund, is charged in the second count of 68 Cr. 467 with receiving a bribe to influence his decision on a mortgage application.

These motions seek a bill of particulars, discovery and inspection, severance, suppression of evidence, dismissal of the indictments, and production of a witness. We consider them in order.

## BILL OF PARTICULARS

The motion for a bill of particulars under Fed.R.Crim.P. 7(f) demands from the government such information as dates and places when each defendant entered the conspiracy; the substance of the conspiracy agreement, if oral, or a copy, if in writing; specifications of the manner in which the conspiracy operated; and evidence which might tend to exculpate the defendants or cast doubt on the credibility of government witnesses or on the validity of the charges in the indictments. Defendants also seek the names of those who made the payments listed in the overt acts, the names of witnesses to such payments, and the names of any informers.

■ The purpose of a bill of particulars is to aid the accused in preparation of his defense, to prevent surprise at trial and to permit the accused, "after judgment, * * * to plead the record and judgment in bar of a further prosecution for the same offense."[1] It is not intended, however, to give defendants a preview of the government's case.[2]

■ The exact dimensions of this conspiracy, like most others, may never be known. Secrecy and concealment are the hallmarks of conspiracy.[3] Granting particulars concerning the formation of the conspiracy, the place and date of each defendant's entrance into the conspiracy, the substance, or a copy, of the conspiracy agreement, and specifications of the manner in which the conspiracy operated would unduly limit the government's proof at trial. Moreover, if defendants were given the minutiae they seek, the slightest discrepancy between the particulars and the evidence at trial would open the door to defendants' attempts to confuse the jury.[4] Finally, it would be "tantamount to a preview of * * * [the government's] case in advance of trial and compel a disclosure of its evidence * * *."[5]

Turning to the remaining items, defendants seek with a dragnet any evidence which might exculpate any defendant or cast doubt on the credibility of government witnesses or on the validity of the charges in the indictments.

■ Disclosure of exculpatory evidence is the government's obligation wholly apart from a demand for particulars.[6] A demand for exculpatory evidence is, therefore, unnecessary. Moreover, the dragnet approach stamps these demands as an impermissible fishing expedition.[7]

■ Particulars seeking the names of witnesses have almost uniformly been

---

1. Wong Tai v. United States, 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927); United States v. Murray, 297 F.2d 812 (2d Cir.), cert. denied, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962); United States v. Lebron, 222 F.2d 531 (2d Cir.), cert. denied, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955).

2. United States v. Caine, 270 F.Supp. 801 (S.D.N.Y.1967).

3. Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); Krulewitch v. United States, 336 U.S. 440, 443–444, 69 S.Ct. 716, 93 L.Ed. 790 (1949).

4. United States v. Bozza, 234 F.Supp. 15, 16 (E.D.N.Y.1964), conviction aff'd, 365 F.2d 206 (2d Cir. 1966).

5. United States v. Simon, 30 F.R.D. 53, 55 (S.D.N.Y.1962).

6. Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States v. Armantrout, 278 F.Supp. 517, 518 (S.D.N.Y.1968); United States v. Cobb, 271 F.Supp. 159, 163–164 (S.D. N.Y.1967).

7. United States v. Birrell, 276 F.Supp. 798, 826 (S.D.N.Y.1967).

denied.[8] The names of informers are privileged. Their identity need not be disclosed until defendants show that disclosure is relevant, necessary and helpful to the defense.[9] No such showing is made here. Defendants are entitled, however, to the names of persons who paid money to the defendants at the times and places alleged in the overt acts.[10]

The government has consented to provide: "(a) the names of co-conspirators known to the government; (b) the dates, times and places of the overt acts alleged insofar as they are known; and (c) the title, office, and relationship of defendant David Wenger to the Central States, Southeast and Southwest Area, Pension Fund." These particulars will afford defendants ample opportunity to prepare for trial, prevent surprise and avoid the danger of double jeopardy.

The motions for bills of particulars are denied, except that the government shall provide the names of those who paid money to defendants, as alleged in the overt acts, and except insofar as the government has consented.

## DISCOVERY AND INSPECTION

All defendants, with the exception of Plumeri, move in the broadest possible language for discovery and inspection under Rule 16(a) of their own state-

ments or confessions. McCarthy, for example, seeks "all written or recorded statements or confessions made by this defendant * * * including, but not limited to, matters which may appear in the grand jury minutes, logs, transcripts of, or on any tapes of, any electronic surveillance pertaining to this defendant, any co-defendant, or informer or co-conspirator." The demands of the others are more limited.

All defendants proceed on the assumption that the 1966 amendments to Rule 16 make such disclosure automatic. Neither Russo nor McCarthy has given any reason for discovery and inspection other than the passage of time between the overt acts alleged and the indictment itself. Wenger, however, states that discovery and inspection are necessary to enable him to object to the admission of the statements at trial, or, if admissible, to rebut them.

It is difficult to find in the language of Rule 16 the basis for defendants' assumption that disclosure of a defendant's own statements is automatic. Before the amendments, there was sharp controversy on the subject of whether a defendant was entitled to his own statements at all.[11] Amended Rule 16(a) states on its face that the court *may* order such disclosure.[12] This permissive, rather than mandatory, lan-

8. United States v. Louis Carreau, Inc., 42 F.R.D. 408, 411 (S.D.N.Y.1967); United States v. Roberts, 264 F.Supp. 622 (S.D. N.Y.1966); United States v. Simon, supra, 30 F.R.D. at 55.

9. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); United States v. Truesdale, 400 F.2d 620, 2d Cir., 1968.

10. United States v. Burgio, 279 F.Supp. 843, 846 (S.D.N.Y.1968); United States v. Roberts, supra.

11. United States v. Murray, supra, 297 F.2d at 819. Compare United States v. Peace, 16 F.R.D. 423 (S.D.N.Y.1954) (allowing inspection), with United States v. Peltz, 18 F.R.D. 394 (S.D.N.Y.1955) (denying inspection).

12. Amended Rule 16(a) provides: "Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, (2) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and (3) recorded testimony of the defendant before a grand jury."

guage clearly calls for the exercise of discretion.[13] "The term 'discretion' denotes the absence of a hard and fast rule. * * * When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of a judge to a just result." [14]

■ There have been some differences of views as to what constitutes grounds for the exercise of the court's discretion under Rule 16(a). The evolution of the amended rule is thoroughly analyzed and expounded by my brother Mansfield in United States v. Louis Carreau, Inc., 42 F.R.D. 408, 413 (S.D. N.Y.1967). We think, with him, that pretrial discovery of a defendant's own statements must be grounded on a showing of good cause, i. e., necessity for the statement in advance of trial in the interest of justice under the circumstances of the particular case.[15]

■ Defendants have failed to show good cause for disclosure here. The mere passage of time is not good cause.[16] The other reason given is an asserted need to determine whether objections can be made to the admissibility of certain statements, or, if admissible, to prepare to rebut them. These arguments are untenable. Surely, a lawyer should be able to make appropriate objections to such evidence when it is offered upon the trial, either spontaneously or after a brief recess to afford a reasonable opportunity to study the material and confer with his client, just as with other statements or documentary evidence. We see no valid reason for treating defendants' possible admissions or impeaching statements any differently from other inculpatory evidence. The

claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement. The motions to discover and inspect defendants' own statements are therefore denied.

■ Defendant Russo also moves for discovery and inspection of his co-defendants' statements, admissions and confessions. He cites no authority, statute, rule or case for this proposed excursion into the government's evidence. Nor does he give any reason why it is necessary. The motion is denied.

■ Defendants Russo and McCarthy move under Rule 16(b) for an inspection and copying of all books, papers, documents or tangible objects which have any relation to the indictments. Again, defendants have chosen the dragnet approach. Rule 16(b) requires that there be a "showing of materiality to the preparation of * * * [the] defense and that the request * * * [be] reasonable." Defendants have ignored those requirements altogether. Accordingly, the motion is denied.

■ Defendant McCarthy moves under Rule 6(e) for an order directing the government to produce "a complete transcript of the Grand Jury minutes" upon which the indictments are based. The reason given for this proposed invasion of grand jury secrecy is that "the testimony of a single witness was primarily the basis" for the indictments. Even if the indictments were based on the testimony of a single witness, we see no reason why that fact compels disclosure of the grand jury minutes. It certainly does not amount to a showing of "particularized need," as required by Dennis v. United States, 384 U.S. 855, 870, 86 S.Ct. 1840, 16 L.Ed.2d 973

---

13. United States v. Knohl, 379 F.2d 427, 442 (2d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967).

14. Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931).

15. See Kaufman, Criminal Discovery and Inspection of Defendant's Own Statements, 57 Colum.L.Rev. 1113, 1120–21 (1957).

16. United States v. Kaminsky, 275 F.Supp. 365, 367 (S.D.N.Y.1967).

(1966). If the same witness testifies at trial, defendants will be afforded an opportunity then to examine the witness' grand jury testimony for purposes of cross-examination.[17] Accordingly, the motion for the discovery of the grand jury minutes is denied.

All defendants seek disclosure of whether they were the objects of any electronic surveillance. The government was unable to answer this question upon oral argument but has since informed us that there was no surveillance of defendants Russo and Wenger. Neither of them advances any reason for disbelieving the government's representation. They are not entitled to a further inquiry on their own unsubstantiated suggestion of eavesdropping.[18]

The government admits, however, that there was eavesdropping of defendants McCarthy and Plumeri. "McCarthy was overheard on seven occasions between April 19, 1962 and May 23, 1962 at the premises of a third party who was under investigation * * *."[19] Plumeri "was overheard on twelve occasions * * * between April 6, 1960 and June 1, 1960" in an apartment.[20]

It is no longer necessary to inquire whether the premises in which the conversations were overheard are "constitutionally protected areas."[21] The newly minted rule is that whatever a person "seeks to preserve as private, even in an area accessible to the public," may be protected against unreasonable searches and seizures, including eavesdropping devices.[22] The lobby of Grand Central Station would seem to qualify under this vague and subjective standard. Arguably, therefore, an inner office or an apartment could be places where the utterer of a statement would reasonably expect that no one but his chosen listener would hear.

The government has not informed the court whether the surveillance was pursuant to a warrant, which might authorize the eavesdropping. Instead, it argues that the overheard product of the eavesdropping is in no way related to the indictments and submits logs of the surveillance to the court for an *in camera* inspection to determine this contention. The court cannot accept, however, the government's *"ex parte* determination of relevancy in lieu of such determination in an adversary proceeding * * *." Kolod v. United States, 390 U.S. 136, 137, 88 S.Ct. 752, 753, 19 L.Ed.2d 962 (1968). Moreover, the validity of *in camera* proceedings, even apart from *Kolod,* is doubtful.[23]

*Kolod* dealt not with pretrial procedures but with a trial. It mandates an adversary proceeding on the content of conversations overheard by electronic eavesdropping and on the relevance of them to the indictment. *Kolod* does not answer the question of when the hearing must be held. Defendants seek a hearing now, while the government wants it postponed until trial.

The procedure for persons aggrieved by intercepted oral communications, outlined in 18 U.S.C. § 2518(10), recently enacted in the Omnibus Crime Control and Safe Streets Act of 1968, Title III, § 802, 82 Stat. 197, provides that a motion to suppress be made before trial but does not specify when a hearing is to be held. Rule 41(e), Fed.R.Crim.P., dealing with suppression of evidence, similarly does not compel a pretrial hearing.

A hearing on the relevance of these eavesdropped conversations to the in-

17. 18 U.S.C. § 3500; United States v. Youngblood, 379 F.2d 365, 370 (2d Cir. 1967).

18. United States v. Kelley, 395 F.2d 727, 730 (2d Cir. 1968).

19. Government's supplemental affidavit in opposition to defendants' motions, p. 2.

20. Ibid.

21. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

22. Id., at 351, 88 S.Ct. at 511.

23. Dennis v. United States, 384 U.S. 855, 874–875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

dictments would be difficult now because of the nature of a conspiracy. The relevancy of evidence in a conspiracy case is not susceptible of a ready answer. Indeed, what is relevant in a conspiracy case is usually so uncertain, even on trial, that most of the evidence is received subject to connection.[24] Like a jig saw puzzle, the picture is revealed only when the bits and pieces of the evidence are fitted together. Relevance thus depends on the whole context of circumstances.

■ A conversation, a name, a place or an event, utterly meaningless or completely innocent to a stranger, as the cryptic statements in the proffered logs are to us, may prove to be tellingly significant and irreparably incriminating to one with knowledge of all the nuances of the conspiracy. The knowledge essential to a decision on the question of relevancy in a conspiracy case, thus, cannot be learned without a full exposition of all the facts and circumstances. This requires a plenary trial.

Common sense and judicial economy, thus, dictate that the hearing, if any, be left to the sound discretion of the trial judge. To hold otherwise would surely give defendants a preview of the government's evidence and the court an exercise in futility.

The procedure under the new statute is merely a restatement of Rule 41(e), Fed.R.Crim.P., and of the procedure outlined long ago in Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Neither the new statute nor *Nardone* permits an excursion into the government's evidence before trial.[25] Also, neither the statute, the rule, nor *Nardone* is inflexible because:

"The civilized conduct of criminal trials cannot be confined within mechanical rules. It necessarily demands the authority of limited direction entrusted to the judge presiding in federal trials, including a well-established range of judicial discretion, subject to appropriate review on appeal, in ruling upon preliminary questions of fact. Such a system as ours must, within the limits here indicated, rely on the learning, good sense, fairness and courage of federal trial judges." Nardone v. United States, supra, 308 U.S. at 342, 60 S.Ct. at 268.

■ Postponing the eavesdropping hearing in these circumstances is the appropriate course of action.[26] Lengthy hearings before trial are usually fruitless, and whatever the outcome are a burden on the efficient and effective administration of the business of this congested court. The interruption of a complex conspiracy trial for such auxiliary inquiries also hampers the administration of justice. Such hearings impede the progress of the main proceeding, obstruct the scheduling of testimony, and distract or break the jury's attention.[27] The result is not infrequently an aborted trial.[28]

We think, therefore, that the appropriate time to hold such hearings is

---

24. Krulewitch v. United States, supra, 336 U.S. at 445, 451 et seq., 69 S.Ct. 716, 93 L.Ed. 790 et seq. (Jackson, J., concurring).

25. Compare S.Rep.No. 1097, 90th Cong., 2d Sess. (1968) (An eavesdropping hearing "should not be turned into a bill of discovery," U.S.Code Cong. & Adm.News, p. 1718), with Nardone v. United States, supra, 308 U.S. at 342, 60 S.Ct. at 268 (A hearing cannot be used as "a means of eliciting what is in the Government's possession before its submission to the jury.").

26. United States v. Birrell, 269 F.Supp. 716, 725–729 (S.D.N.Y.1967); United States v. Pardo-Bolland, 229 F.Supp. 473, 475 (S.D.N.Y.1964), conviction aff'd, 348 F.2d 316 (2d Cir.), cert. denied, 382 U.S. 944, 86 S.Ct. 388, 15 L.Ed.2d 353 (1965).

27. Nardone v. United States, supra, 308 U.S. at 341–342, 60 S.Ct. 266.

28. See United States v. Bentvena, 288 F.2d 442, 446 (2d Cir. 1961); 319 F.2d 916, 921, 929 (2d Cir. 1963).

after trial.[29] If the trial results in an acquittal, there is no need for a hearing. If it results in a conviction, the trial judge will be intimately familiar with the evidence and able to judge with precision whether any of it was tainted or the fruit of the poisoned tree.

The onus of staying clear of tainted evidence is on the prosecution. It is utterly pointless for the government to try a lengthy conspiracy case only to lose its victory by using tainted evidence. Moreover, if the government observes its obligation, a post-trial hearing might well become unnecessary once the defense is shown the eavesdropping material. Finally, if a hearing is necessary, it will be narrowly focused and short and simple.

It would be unthinkable, however, to hobble the trial judge with our views of the matter. Only he will be able to decide, in the exercise of his discretion, whether the most economical use of judicial time, without prejudice to the rights of the accused or the government, will be served by a plenary hearing before, during or after trial. The time of the hearing is therefore left to the sound discretion of the trial judge.

Besides the eavesdropping which the government admits, Plumeri contends that another electronic surveillance device was discovered at a different address from the location of the admitted eavesdropping. The claim is supported by photographic evidence of the device. The government responds that it neither owned nor operated the device. We think this insufficient in light of the fact that the government has admitted some eavesdropping in this case. United States v. Kelley, 395 F.2d 727 (2d Cir. 1968), on which the government relies,

is inapposite because there was no substantiation there of the suggestion of eavesdropping. The government's response does not foreclose the possibility that the device involved here might have been operated by some other law enforcement agency which disclosed conversations to a federal agency or to the United States Attorney.[30]

We conclude that Plumeri is entitled to a hearing on the questions of who installed and operated the device, whether intercepted conversations were turned over to a federal agency or to the United States Attorney, and, if they were, whether the conversations are relevant to the indictments. This hearing will also be referred to the trial judge.

### SEVERANCE

Defendant Russo moves under Rule 14, Fed.R.Crim.P., for a severance of his trial. Russo advances these reasons for severance: (1) he intends to call his co-defendants as witnesses, and they may assert their constitutional privilege; (2) statements or confessions of co-defendants may be introduced at trial and would irreparably damage him; and (3) the statute of limitations has run as to him.

Defendant's first reason is specious. Even if a severance were granted, his co-defendants could still assert their Fifth Amendment privilege. The second reason is buttressed by the new rule that admission into evidence of a co-defendant's confession is no longer permissible, even with cautionary instructions.[31] The government, however, may not have any confessions of defendants. Even if it does, it may not use them upon the trial. Russo's second reason for severance is thus premature.[32]

29. United States v. Agueci, 310 F.2d 817, 834, 99 A.L.R.2d 478 (2d Cir. 1962) (propriety of post-trial eavesdropping hearing affirmed without discussion), cert. denied sub nom. Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L. Ed.2d 11 (1963).

30. See United States v. Franzese, 392 F.2d 954, 965 (2d Cir.), petition for cert. filed, 36 U.S.L. Week. 3444 (U.S. May 20, 1968) (No. 1420).

31. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

32. United States v. Pilnick, 267 F.Supp. 791, 800–801 (S.D.N.Y.1967).

Finally, the contention that the statute of limitations has run is premised on the fact that the only mention of Russo in the overt acts is in April 1962. The government charges, however, that Russo was a member of a conspiracy which acted in 1963, well within the statute of limitations. It is hornbook law that the acts of one co-conspirator in furtherance of the conspiracy are binding upon all conspirators.

Defendant Russo has failed to demonstrate that he is entitled to a severance. The motion is denied.

## SUPPRESSION OF EVIDENCE

Defendant Plumeri moves to suppress any statement made by him to Herbert Itkin, while Itkin was acting as his attorney, and also any statement made by the defendant to Itkin, while defendant was in prison. Presumably, defendant is claiming the attorney-client privilege.

■ It is not clear at this stage whether Itkin will or will not be a witness. If he is to be a witness, we cannot determine what his testimony will be. The attorney-client privilege may or may not apply to some of defendant's statements to Itkin. The privilege would not extend, for example, to statements made or advice given about illegal activity.[33]

■ Only the trial judge will be able to determine the applicability of the privilege to defendant's statements to Itkin. Accordingly, the motion is denied.

## DISMISSAL OF THE INDICTMENTS

Defendant Plumeri moves to dismiss the indictments on two grounds: (1) denial of his right to a speedy trial and (2) a key government witness acted as

his attorney during part of the period covered by the indictments.

■ The claim of denial of a speedy trial is based on the fact that Plumeri was not indicted until June 1968, although the last overt act allegedly occurred in June 1963. The constitutional right to a speedy trial applies only to proceedings after indictment. Defendant is really claiming that he has been prejudiced by pre-indictment delay. The mere passage of time, however, does not give rise to a presumption of prejudice. Prejudice must be demonstrated.[34] Defendant's allegation that he has some difficulty in remembering dates is purely conclusory and wholly fails to show prejudice. Only the trial judge will be able to determine whether the passage of time has unduly or unfairly impaired the preparation of a defense, or in any way prejudiced the defendant.[35]

■ Turning to the second ground for dismissing the indictments, defendant does not state why the fact that his former attorney may be a key government witness compels dismissal. We are able to find nothing in that fact which warrants such drastic relief. Accordingly, the motion is denied.

## PRODUCTION OF A WITNESS

Defendants move to interview Herbert Itkin, who is in protective federal custody. No one owns a witness. The government therefore consented on oral argument to defendants interviewing Itkin.

■ Accordingly, the government is directed to produce Itkin for an interview by defendants' attorneys, at a mutually convenient time.

33. Uniform Rule of Evidence 26(2); United States v. Hoffa, 349 F.2d 20, 37 (6th Cir. 1965), aff'd, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

34. United States v. Feinberg, 383 F.2d 60, 65 (2d Cir. 1967), cert. denied, 389 U.S.

1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968); United States v. Capaldo, 402 F.2d 821, 2d Cir., Oct. 7, 1968.

35. United States v. Feinberg, supra; United States v. Kaminsky, supra, 275 F.Supp. at 366.

947

## CONCLUSION

The motions for bills of particulars are granted to the extent that the government consents, and the name or names of those who made the payments alleged in the overt acts will be provided; the motions for discovery and inspection are denied, except that a hearing on the issues specified is referred to the trial judge; the motion for a severance is denied; the motion to suppress is denied; the motions to dismiss the indictments are denied; and the motions to interview Itkin are granted.

So ordered.