**UNITED STATES of America,
Plaintiff,**

**v.**

**Eqbal AHMAD et al., Defendants.**

**Crim. No. 14950.**

United States District Court,
M. D. Pennsylvania.

Aug. 2, 1971.

See also D.C., 329 F.Supp. 292; D.C., 53 F.R.D. 186.

William S. Lynch, Deputy Asst. U. S. Atty., U. S. Dept. of Justice, Washington, D. C., and S. John Cottone, U. S. Atty. Middle Dist. of Pa., Scranton, Pa., for plaintiff.

Addison Bowman, Washington, D. C., and J. Thos. Menaker, Harrisburg, Pa., for defendants.

MEMORANDUM OPINION
AND ORDER

HERMAN, District Judge.

The indictment concerning which a Bill of Particulars is sought is a document consisting of 15 legal-size pages, plus several pages of exhibits. It is divided into 10 counts.

Count No. I, the conspiracy count, charges that the eight named defendants, on or about January 1, 1970, the exact date being unknown to the Grand Jury, and continuing to on or about January 7, 1971, in the Middle District of Pennsylvania and elsewhere, conspired with four other named persons and with other persons unknown to the Grand Jury to commit certain offenses against the United States, which, in the language of the acts involved, were violations of (a) Title 18 U.S.C. § 1361, willfully injuring and committing depredations against property of the United States; to wit, files, books, records, etc., of the Selective Service System; (b) Title 18 U.S.C. § 2071, willfully and unlawfully removing, mutilating, and destroying files, records, books, etc., of the Selective Service System; (c) Title 50 U.S.C.App. § 462(a), willfully and knowingly interfering with the administration of the Selective Service Act and rules and regulations made pursuant thereto; (d) Title 18 U.S.C. § 844(f), maliciously damaging and destroying by means of an explosive personal and real property of the United States and departments and agencies thereof; (e) Title 26 U.S.C. § 5861(d), willfully and unlawfully possessing firearms (describing them in detail) which were not

registered in the National Firearms Registration and Transfer Record; (f) Title 18 U.S.C. § 1201, unlawfully seizing, confining, kidnapping, abducting, and carrying away and transporting in interstate commerce a person for ransom or otherwise.

There is set forth in pages 3 and 4 of the indictment in narrative form many of the details surrounding the alleged conspiracy [1] and thereafter there follows description of 35 overt acts upon which the conspiracy is based.

For the most part the alleged overt acts include the approximate date of the act, the parties involved where known to the government, the place where the act took place, and the nature of the act. In certain of the acts, however, which we shall hereinafter discuss, more particularity should be given.

Count II charges Elizabeth McAlister and Eqbal Ahmad with the violation of §§ 876 and 2 of Title 18 substantially in the appropriate language of § 876,[2] averring that on or about August 20, 1970 they willfully and knowingly caused to be delivered by the Post Office Department a letter to Philip Berrigan addressed to Patricia Rom, at Lewisburg,

---

1. "It was part of said conspiracy that the said defendants and their co-conspirators would arrange, plan, and recruit the necessary personnel for the entry of Selective Service board offices in Philadelphia, Pennsylvania; Wilmington, Dover, and Georgetown, Delaware; and Rochester, New York, as well as other parts of the United States. The defendants and co-conspirators would surreptitiously and after usual business hours thereupon deface, mutilate, remove, obliterate, and destroy official files of the Selective Service System and otherwise commit depredations against personal property of agencies and departments of the United States.

"It was further a part of said conspiracy that the defendants and co-conspirators would leave anti-war statements and writings on the premises of the Selective Service board offices where they had defaced, mutilated, removed, obliterated, and destroyed official records, books, papers, documents, and other personal property.

"It was further a part of said conspiracy that certain of the defendants and co-conspirators would 'surface' after their actions against Selective Service Board offices, that is; certain of the defendants and co-conspirators would make a public statement and issue press releases seeking to obtain publicity for their destructive activities in the course of which they would express anti-war and anti-government statements and claim responsibility for destroying Selective Service board files and other files. The defendants and co-conspirators would also seek to persuade others who had not participated in the destruction of the Selective Service board files and other files to permit their names

to be used in public statements claiming responsibility for such destruction and vandalism.

"It was further a part of said conspiracy that, in order to further disrupt governmental activities and to call their anti-war and anti-government views to the attention of the public, the defendants and co-conspirators would obtain maps and diagrams of the underground tunnels in Washington, D. C., containing the heating systems for government buildings of the United States. The defendants and co-conspirators would learn the locations of the heating pipes within the tunnels and would enter these tunnels for the purpose of locating the heating pipes; that the defendants and their co-conspirators would obtain dynamite and other explosive devices; that on George Washington's birthday in 1971 the defendants and other co-conspirators would enter the aforesaid underground tunnel system in Washington, D. C. and detonate explosive devices in approximately five locations in order to damage and destroy heating pipes belonging to the United States and thereby rendering inoperative the heating system in government buildings of the United States.

"It was further a part of the said conspiracy that on the following day, the defendants and co-conspirators would seize, kidnap, abduct, and carry away Presidential Advisor Henry Kissinger and issue a statement that his safety depended upon the satisfaction of certain demands to be made by the defendants and their co-conspirators."

2. 18 U.S.C. § 2 is the section of the code providing punishment as principals to those who aid or abet.

Pennsylvania, containing a threat to kidnap Henry Kissinger, quoting what appears to be a substantial part of the letter.

Count III charges Philip Berrigan with the violation of the same sections of 'Title 18 of the code, substantially in the appropriate language, averring that on August 22, 1970 he willfully and knowingly caused to be delivered by the Post Office Department a letter to Elizabeth McAlister addressed to Grace Marie Russell, at 315 West 86th Street, Apartment 1–C, New York, New York, containing a threat to kidnap Henry Kissinger, and quoting what appears to be a substantial part of the letter.

Count IV charges that Philip Berrigan on or about May 24, 1970, contrary to rules and regulations promulgated by the Attorney General of the United States and without knowledge and consent of the Warden of such institution, caused to be sent from the United States Penitentiary, at Lewisburg, Pennsylvania, written communications for Elizabeth McAlister in violation of §§ 1791 and 2 of Title 18 of the United States Code. This is in substantially the language of § 1791.

Counts VI, VII and X each charge Philip Berrigan with attempting to send, on specific dates, contrary to the rules and regulations, written communications from the said penitentiary to Elizabeth McAlister in violation of Title 18 U.S.C. § 1791. These, likewise, are substantially in the language of the act.

Counts V and VII each charge Elizabeth McAlister with attempting, on specific dates, to introduce into and upon the grounds of the United States Penitentiary, at Lewisburg, Pennsylvania, a package containing written communications for Philip Berrigan in violation of Title 18 U.S.C. § 1791.

Count IX charges both Eqbal Ahmad and Elizabeth McAlister with attempting, on or about August 20, 1970, to introduce into and upon the grounds of the said penitentiary a package containing written communications for Philip Berrigan, contrary to Title 18 U.S.C. § 1791, and substantially in the language of the act.

The defendants seek a multitude of things in their motion for a bill of particulars, averring that the 1966 amendment to Rule 7(f) of the Federal Rules of Criminal Procedure liberalized the granting of such a bill, and citing as recognizing this liberalization: Nesson v. United States, 388 F.2d 603 (1st Cir. 1968); Walsh v. United States, 371 F.2d 436 (1st Cir. 1967); United States v. Jaskiewicz, 278 F.Supp. 525 (E.D.Pa. 1968); United States v. Tanner, 279 F.Supp. 457 (N.D.Ill.1967); United States v. Palmisano, 273 F.Supp. 750 (E.D.Pa.1967); 1 Wright, Federal Practice and Procedure § 129, at 282 (1969), among other authorities. Indeed, on the basis of these authorities, defendants seek a complete script of the government's case, including, in an indirect fashion, to discover most of the government's evidence and lists of witnesses, and in some respects seeking many of the things they sought in their discovery motion, which motion was considered in a memorandum opinion filed this date. In light of such sweeping requests for particulars one is tempted to deny all of them on the ground that such requests could be nothing but a fishing expedition. United States v. Dolan, 113 F.Supp. 757 (D.Conn.1953).

We agree, however, with defendants, that the amended Rule 7(f) has liberalized to some extent the granting of the bill of particulars, 1 Wright, Federal Practice and Procedure § 129 (1969); 8 Moore's Federal Practice-Cipes, Criminal Rules § 7.06 (1970), and cases cited by the text writers.

Generally in a complex case such as this one some particulars are perhaps indicated, United States v. Onassis, 125 F.Supp. 190 (D.D.C.1954), but even under the amended rule a bill of particulars is not a matter of right but

the grant or denial of such a bill is within the sound discretion of the court. The function of a bill of particulars is two- or perhaps three-fold: (1) to provide a defendant with details concerning the charge against him *if this is necessary* to the preparation of his defense; (2) to avoid prejudicial surprise at his trial; and, perhaps (3), to permit the defendant to plead double jeopardy if a subsequent prosecution for the same offense should follow.[3] United States v. Mahany, 305 F.Supp. 1205 (N.D.Ill.1969); United States v. Smith, 16 F.R.D. 372 (W.D.Mo.1954); 1 Wright, Federal Practice and Procedure § 129, at 283 (1969). As Professor Wright says, "The test in passing on a motion for a bill of particulars should be whether it is *necessary*[4] that defendant have the particulars sought in order to prepare his defense and in order that prejudicial surprise will be avoided. * * *"

In the light of these principles we will review defendants' requests and rule thereon.

■ As to Count No. 1, conspiracy, defendants have 18 requests, many of which are divided into several parts which we shall consider and rule on seriatim.

First, the government shall furnish the defendants with the names and addresses of all co-conspirators who have come to the knowledge of the government, and if the government shall acquire knowledge of any additional co-conspirators before trial the names and addresses of such co-conspirators shall also be promptly furnished to the defendants. United States v. Pilnick, 267 F. Supp. 791 (S.D.N.Y.1967); United States v. Covelli, 210 F.Supp. 589 (N.D. Ill.1962); United States v. King, 49 F.R.D. 51 (S.D.N.Y.1970).

Concerning the request to know the time, place, and manner in which each defendant joined the conspiracy, the period of time during which he was a member, and when he withdrew, the request is denied. *See* Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1962); United States v. Crisona, 271 F.Supp. 150 (S.D.N.Y.1967), aff'd, 2 Cir., 416 F.2d 107 (1969); United States v. Mahany, 305 F.Supp. 1205 (N.D.Ill.1969); United States v. McCarthy, 292 F.Supp. 937 (S.D.N.Y.1968); United States v. Kahaner, 203 F.Supp. 78 (S.D.N.Y.1962). In the McCarthy case it was aptly said, " * * * Granting particulars concerning the formation of the conspiracy, the place and date of each defendant's entrance into the conspiracy, the substance, or a copy, of the conspiracy agreement, and specifications of the manner in which the conspiracy operated would unduly limit the government's proof at trial. Moreover, if defendants were given the minutiae they seek, the slightest discrepancy between the particulars and the evidence at trial would open the door to defendants' attempts to confuse the jury. Finally, it would be 'tantamount to a preview of [the government's] case in advance of trial and compel a disclosure of its evidence'" (292 F.Supp. at 940).

In paragraph 3 defendants ask the government to tell them to which of the 6 offenses each of them "have specifically and expressly subscribed" and "which of the other defendants or unindicted co-conspirators he or she is alleged to have conspired with," and the manner and date of such conspiring. This request is much too broad and under the conspiracy law is unnecessary for defendants to prepare their defense—for whether or not a conspirator subscribed to any particular act of other conspirators is of no moment. In the description on pages 3 and 4 of the indictment and in the 35 overt acts enunciated, the description of how the conspiracy is al-

3. Some writers doubt this 3d reason for the granting of a bill of particulars.

4. Emphasis ours throughout unless otherwise indicated.

leged to have operated and what part the defendants played in the various parts of it are adequately set forth, with the following exceptions to which the government is directed to particularize as far as it is able: (1) which of the defendants are alleged to have conspired to violate Title 18 U.S.C. § 844(f), damaging by explosives, (2) which of the defendants are alleged to have conspired to possess firearms not registered, in violation of Title 26 U.S.C. § 5861(d).[5]

■ *See* United States v. Tanner, *supra,* where it was said, as we say here, that where this court directs the government to supply certain particulars it is not our intention to strictly limit the government's proof at trial, and so, if the government cannot respond in precise terms because it is uncertain as to the facts, the response should be as precise as the government can make it.

■ Paragraph 4 calls for evidence, much of which was previously sought by defendants' discovery motion; it would call for an excessive amount of time and effort on the part of the government to arrive at a proper answer to this request, if, indeed, it could at this time give a proper answer. And further, the request appears to be nothing but a fishing expedition. This request is denied.

Paragraphs 5 through 16 were argued together as one request, and they will be so treated in this opinion. They may be summarized as seeking specificity concerning the Selective Service Board offices that it is alleged the defendants would arrange to enter; who among the defendants would recruit others to enter them; which of the defendants did arrange to enter the said offices; who was *actually recruited* to enter them, when and where the planning took place; who among the defendants or co-con-

spirators actually did enter Selective Service Board offices; which offices, and when, and the manner of entry. Then defendants request the same particulars concerning the mutilating, obliterating, and destruction of records in such offices. Then defendants sought the same particulars concerning the leaving of anti-war statements and writings, and whether, and where and when such literature was left. Next, defendants request specificity concerning the public statements and press releases of defendants and co-conspirators; who were to make them; who did make them, when, where, and in what manner; who were to persuade others to permit their names to be used; who actually did permit their names to be used as those who participated in destruction, their addresses, the date, place and manner of such acts; and who actually did commit the acts, where, when, and in what manner. They desire to know the exact type of destructive devices referred to in Count I of the indictment; the person or persons who agreed expressly to obtain them; the time and place of such agreement by each such person; the precise manner in which the defendants allegedly planned to obtain these devices; the person or persons who were to obtain the devices, and when; and then, if such devices were obtained, defendants ask the same particulars as those concerning the agreement to obtain them. They ask for further details concerning the allegations of destruction of heating pipes; the agreement concerning it; the persons involved, etc. The same particulars are sought concerning the alleged kidnapping.

■ It is obvious that the defendants are seeking a complete script of the evidence to be offered by the government and in as great detail as the minds of resourceful counsel could imagine. This

---

5. The overt acts as particularized by the government in substantial compliance with this opinion and order will have given defendants all required particulars except as to these two offenses.

is obviously not called for under the rules and is denied,[6] except that the government is directed to supply to the defendants, as far as is known to it, the location and name of each of the Selective Service Board offices which the defendants or their co-conspirators allegedly planned to enter, or planned to recruit others to do so, and destroy records therein and to leave anti-war literature. If the government plans to offer proof that defendants planned similar activity against other agencies of the United States, to supply to defendants the name of such agencies and where located.

■ Paragraph 17 asks that the government specify any overt acts not enumerated in the indictment concerning which the government intends to offer evidence at the trial. This is a proper request and will be granted. *See* United States v. Pilnick, *supra;* United States v. Covelli, *supra.*

■ Paragraph 18 concerns any eavesdropping by wire interception, electronic or other mechanical device, or human being, and is clearly not a subject for a request for particulars and is denied. Another motion under Rule 12 of the Federal Rules of Criminal Procedure filed by defendants in this case deals exclusively with illegal surveillance and will be dealt with in a separate opinion.

■ Defendants complain about every one of the 35 overt acts set out in the indictment and ask for more specificity in each. Many of these requests are much too broad and ask for the most detailed evidentiary matter, and, of course, will be denied. Other requests are well taken and the government will be directed to respond as far as it is able without unduly limiting its proof at trial.

Concerning Overt Act No. 1, the government is directed to specify the approximate dates on which each alleged meeting occurred and the approximate time of such meetings, if known, and the names of any other persons present as far as known to the government.

Concerning Overt Act No. 2, the government is directed to specify the precise locations of the three Selective Service Board offices, and to give the defendants the names of any other persons who participated in the alleged depredations, if known to the government.

In Overt Act No. 3 the indictment avers that Joseph Wenderoth, John Theodore Glick, "and others," "surface[d]" in Philadelphia claiming responsibility for vandalism of the three Selective Service Board offices mentioned in Overt Act No. 2. The government in partial response to the request for particulars here, shall advise the defendants who the "others" were, if known to the government, and the location of the *surfacing*, if known.

Concerning Overt Act No. 4, the government shall specify the location of the underground tunnels and the point of entry, or approximate point of entry, where it is alleged that Philip Berrigan and Joseph Wenderoth entered.

Concerning Overt Act No. 5, the government shall specify the make, model, and motor vehicle tag number of the truck, if known, and who accompanied Scoblick in the truck to Washington.

Concerning Overt Act No. 6, the government shall specify the make, model, and motor vehicle tag number of the van, the approximate location in Wilmington, Delaware, where it is alleged the van was rented, and the names of any persons who accompanied Elizabeth McAlister to Selective Service Board offices in Wilmington, Dover, and George-

6. *See* United States v. Cullen, 305 F. Supp. 695 (E.D.Wis.1969) ; United States v. Bozza, 234 F.Supp. 15 (E.D. N.Y.1964) ; United States v. Gilboy, 160 F.Supp. 442 (M.D.Pa.1958) ; United States v. Cummings, 49 F.R.D. 160 (S.D. N.Y.1969).

town, Delaware, if such names are known to the government.

Concerning Overt Act No. 7, the government shall specify the precise locations of the Selective Service Board offices, and the names of any other persons known to the government but not named in the description of the overt act who participated in the alleged depredations.

Concerning Overt Act No. 8, the government shall specify the telephone number that McLaughlin called in Lewisburg on June 19, 1970, and the person he called at that number.

Concerning Overt Act No. 9, the government shall specify the destination in Lewisburg of Wenderoth and McLaughlin, the names of any persons accompanying them there, and any persons they met there, if any such are known to the government.

Overt Act No. 10 is sufficiently specific and the request for more specificity is denied.

Overt Act No. 11 is sufficiently specific with the exception that the government shall specify "the others" that Elizabeth McAlister planned to meet in Rochester, if such others are known to the government.

Overt Act No. 12 is sufficiently specific and the request for more specificity here is denied.

Overt Act No. 13 is sufficiently specific and the request for more specificity here is denied.

Concerning Overt Act No. 14, the government shall specify the destination in Lewisburg of McLaughlin and Wenderoth, the names of any persons accompanying them there, and any persons they met there, if any such are known to the government.

Concerning Overt Act No. 15, the government shall specify the location of the alleged meeting in Lewisburg and the names of any persons present not named in the description of this overt act.

Concerning Overt Act No. 16, the government shall specify the location of the alleged meeting in Wilmington, Delaware, and the names of any persons present not named in the description of this overt act.

Concerning Overt Act No. 17, the government shall specify the destination in Lewisburg of Scoblick on August 10, 1970, the names of any persons accompanying him there, and any persons he met there, if any such are known to the government.

Concerning Overt Act No. 18, the government shall specify the destination in Lewisburg of Glick, the names of any persons accompanying him there, and the persons he met there, if any such are known to the government.

Concerning Overt Act No. 19, the government shall specify the destination in Connecticut of McAlister, Davidon, Mayer, and Egan, and the names of any persons who accompanied them there.

Concerning Overt Act No. 20, the government shall specify the location in Connecticut where the named parties met and the names of any other persons known to the government who met there with them.

Overt Act No. 21 is sufficiently specific and the request for more specificity here is denied.

Overt Act No. 22 is sufficiently specific and the request for more specificity here is denied.

Concerning Overt Act No. 23, the government is directed to specify the address from which Beverly Bell moved and the address to which she moved in Washington, D. C.

Concerning Overt Act No. 24, the government shall specify the telephone number that Elizabeth McAlister called in Lewisburg on August 19, 1970, and the person she called at that number.

Concerning Overt Acts Nos. 25 and 26, the same specificity is required of

the government as is required concerning Overt Act No. 24.

Concerning Overt Act No. 27, the government shall specify the location in Sea Girt, New Jersey, at which the named parties met.

Concerning Overt Act No. 28, the government shall specify the destination in Danbury, Connecticut, of Elizabeth McAlister on September 4, 1970, and whether any other person accompanied her, if known to the government.

Concerning Overt Act No. 29, the government shall specify the persons present at the meeting at 43 North Water Street, Lewisburg, Pennsylvania, on September 5, 1970, in addition to those named in the description of this overt act.

Overt Act No. 30 is sufficiently specific and the request for more specificity here is denied.

Concerning Overt Act No. 31, the government shall specify the addressee or addressees of the September 9, 1970 letter Wenderoth sent to Lewisburg, Pennsylvania, and the names of the persons receiving or securing possession of the letter, if known to the government.

Concerning Overt Act No. 32, the government shall specify the name and address of the General Services Administration Engineer with whom Wenderoth is alleged to have discussed the Washington, D. C. tunnel system.

Concerning Overt Act No. 33, the government shall specify the destination in Lewisburg, Pennsylvania, of Elizabeth McAlister, and the names of any persons accompanying her there, if known to the government.

Concerning Overt Act No. 34, the government shall specify the location in Baltimore, Maryland, where the named parties met and the names of any other persons known to the government who met there with them.

Concerning Overt Act No. 35, the government shall specify the telephone number that Wenderoth called in Lewisburg, Pennsylvania, on November 12, 1970, and the person he called at that number.

Except as we have directed specificity concerning the overt acts, all other requests of the defendants for specific details relating to the overt acts are denied.

As to Count II in the indictment, the government shall specify the author of the alleged communication, approximately when and where it was delivered to the Post Office Department, and by whom, if such information is known to the government. The government shall further advise defendants whether or not Exhibit A contains the full transcript of the letter. In all other respects the request of defendants for more specificity as to Count II is denied.

As to Count III in the indictment, the government shall specify the author of the alleged communication, approximately when and where it was delivered to the Post Office Department, and by whom, if such information is known to the government. The government shall further advise the defendants whether or not Exhibit B contains the full transcript of the letter. In all other respects the request of defendants for more specificity as to Count III is denied.

Defendants ask for certain particulars concerning Counts IV, VI, VII [7] and X, all of which charge Philip Berrigan with either causing to be sent or attempting to send from the United States Penitentiary, at Lewisburg, Pennsylvania, papers containing written communications for Elizabeth McAlister contrary to rules and regulations promulgated by the Attorney General, and

7. This apparently should be VIII, and we will so treat it.

without the knowledge and consent of the Warden of the institution, in violation of Title 18 U.S.C. § 1791. The government shall set forth the rules and regulations promulgated by the Attorney General and referred to in Counts IV, VI, VIII and X, and specify the author or authors of the alleged communications and the name of the person or persons to whom the papers were directed for Elizabeth McAlister. In all other respects the requests for more particulars here are denied.

In connection with Counts V and VII, both of which charge Elizabeth McAlister with attempting to introduce into and upon the grounds of the United States Penitentiary, at Lewisburg, Pennsylvania, a package containing written communications for Philip Berrigan contrary to rules and regulations promulgated by the Attorney General, and without the knowledge and consent of the Warden of the institution, in violation of Title 18 U.S.C. § 1791, the defendants seek substantially the same particulars that they sought in connection with Counts IV, V, VIII and X, and we will grant them the same particulars we there granted; that is, the government shall set forth the rules and regulations promulgated by the Attorney General and referred to in Counts V and VII of the indictment, and specify the author or authors of the alleged communications and to whom they were directed for Philip Berrigan. In all other respects the requests for more particulars here are denied.

Count IX charges Eqbal Ahmad and Elizabeth McAlister with the same type offense as those charged to Elizabeth McAlister above in Counts V and VII, and defendants ask the same particulars in Count IX as they did in Counts V and VII, and we grant them the same particulars as we did there, and, as there, deny the balance of their requests.

The direction to the government to particularize various allegations in the indictment shall be a continuing direction and where the government cannot now furnish the particulars to defendants but find that at a later date they can so particularize, they shall do so.