Robert P. Kennedy, J.
Defendant was indicted for and, after a jury trial, convicted of two counts of criminal sale of a controlled substance in the third degree, each being a class A-III felony. At the close of the People’s case, defendant moved for an order directing the prosecution to produce the informer involved in the matter." This motion was renewed at the close of proof. Decision was reserved both times. Defendant now moves to set aside the verdicts under CPL 330.30 (subd. 1).
*898 Prior to trial, defendant had moved for an order compelling the People to disclose the identity of their witnesses and, in particular, confidential informants. The motion was denied on the grounds that it was impossible to determine from the motion papers whether disclosure would be required. This decision was based partially on the language used in People v. Goggins (42 A D 2d 227). Since the denial of defendant’s motion to compel disclosure, People v. Goggins (supra) has been affirmed by the Court of Appeals (34 N Y 2d 163). The affirmance was not, however, without elaborations or the answering of questions not reached by the Appellate Division and, on one point at least, the suggestion that a point not considered by the Appellate Division was being resolvéd.
Factually, the case before this court falls within the pattern of Goggins. Testimony on the trial by undercover police officer Herritage was that a paid informant introduced him to defendant ; that he, at least on the first of two meetings, in the presence of the informer and no one else other than defendant, purchased heroin from defendant. On the second occasion, if the informer was not actually with the agent and defendant at the time of the sale and purchase of heroin, she went to and was in the store with the agent and defendant at the time of the transaction. Defendant, while admitting that he knew the informant, denied ever seeing her with the agent, denied ever seeing the agent before he walked into court, and denied ever selling heroin. Three other undercover agents testified as to seeing defendant, the informer and Herritage standing together in a doorway where it is claimed the first transaction took place. One officer testified that he saw Herritage and defendant ‘£ reach toward each other ’ ’ although he could not see anything pass between them.
We are not concerned here with disclosing the identity of the informant. If that was not done on the voir dire it was all through the trial, her name as well as her pay. The problem is, therefore, not disclosure but production and this is where language in the Court of Appeals’ affirmance of Goggins raises at least one question with serious implications for both the People and defendant. After deciding the issue not reached by the Appellate Division as to whether disclosure should take place in open court or at an in camera hearing in favor of the open court proceeding, and after holding that defendant might be entitled to disclosure on either or both the issues of guilt or identification, the court then went on to say in the last paragraph of the majority opinion (p. 173),££ Hence, disclosure should have been directed in Goggins, and even, if appropriate, prod/uction of *899 the informant-witness * * * Such a drastic requirement of full disclosure or production ”. (Emphasis added.)
It is difficult to conceive of a case arising where disclosure under Gog gins would he mandated where production would not be “ appropriate ”. Here, disclosure would certainly be required, not so much on the issue of identification as there was ample testimony of the circumstances under which defendant was observed by the four officers in daylight, but on the issue of guilt or innocence. There was just the testimony of officer Herritage that the sales took place countered by defendant’s testimony that it never happened. The informant was the only other person in a position to corroborate the testimony of either officer Herritage or the defendant.
One result of Gog gins will be to add another pretrial hearing (the second to be added by this term of the high court, see People v. Sandoval, 34 N Y 2d 371) to determine whether disclosure is required or not.
In the case now before the court, on receiving defendant’s motion to compel production of the informant, the District Attorney was directed to be prepared to offer proof on resumption of the trial the following morning as to where the informant was arid, that if he was unable to give that information, what steps had been taken to locate her. This proof was presented at a hearing in open court in the absence of the jury. On this hearing, it developed that the informer was first moved from her residence to a hotel at her request after she claimed that she had been threatened and her apartment broken into; that on December 6, 1973 she was taken to the airport by a member of the Drug Enforcement Task Force where she took a plane for Orlando, Florida with a ticket paid for by the Drug Enforcement Administration, this trip having been arranged at the informant’s request because she said she felt threatened; that when she left she stated she was going to Sanford, Florida; that the police have had no contact with her since; that no arrangements were made as to how the police might contact her; that prior to this proceeding, no attempts had been made to contact her; that during the recess,"the police called the Sanford, Florida Police Department and asked them to check their records and their narcotics officers for any information they might have as to the informant with negative results; the police called Sanford, Florida telephone information for a phone number for her with negative results; that the police went to her former address in Rochester and found that no one there knew where the informant was; that they checked the records of Rochester City Court and *900 found no record of a recent arrest of the informant; that they checked the Monroe County Sheriff’s Department with negative results; that they requested the F.B.I. to assist and that department could find no records of arrest of informant in Florida in the last six months; that the police made no effort to change the informant’s identity.
In view of all that has transpired and with the frequently quoted Roviaro v. United States (353 U. S. 53) balancing test in mind, we are put to the question, must the prosecution produce the witness or face dismissal of the indictment on its failure to do so? How far must they go? One wag is reported to have said that we are the only country in the world where the jury is locked up and the defendant allowed to go home. Must we now add informant witnesses to the list of those jailed? (CPL art. 620.) How long must such witnesses be confined, bailed or hold themselves available? In the case before the court, the offenses were committed in October, 1973 and tried in June, 1974. Experience has shown that arrests in narcotics cases are not made immediately but are delayed so as not to destroy the effectiveness of undercover agents. Must this now he changed? Experience also teaches us that the same informant is used on different cases. How much jeopardy must the informant assume after testifying at the case to be first reached for trial and while awaiting succeeding trials ?
Are we now to cease giving even lip service to the Roviaro ‘ ‘ balancing test”? The importance of the answer to this question cannot be minimized. As stated by Judge Jasen in his dissent in Goggins (p. 176), “ Indeed, it has been estimated that 95% of all Federal narcotics cases are obtained as the result of the work of informers ”. Will the law require “ produce or perish ’ ’ or will a clean hands, good-faith effort to produce the informant suffice?
It would appear that prior to Goggins, our law was that the prosecution was not required to produce informants, even in a one on one situation. In People v. Vaughn (35 A D 2d 889) a police officer testified that he saw defendant receive money from one Paul and give Paul a small packet and that Paul immediately gave the packet to the officer. Other than producing two other witnesses to prove continuity of the packet and the analysis of its contents, that was the case against the defendant. The Appellate Division affirmed defendant’s conviction over his claim that he was deprived of his right to confront Paul. In that case, both the issues of identification and guilt or innocence were involved.
*901 Although I read McCray v. Illinois (386 U. S. 300), as holding that the issue of disclosure is not a constitutional issue and the Appellate Division in Vaughn (supra) found no such problem, the majority in Goggins held that even an in camera examination of the informer-witness would ‘ ‘ arguably trifle with the constitutional right to confrontation and the right to counsel ”.
Counsel for both parties have submitted memorandums and are not as far apart as usual. From their memorandums and the court’s own research, it appears that the law in the Federal ¡jurisdiction and others (see United States v. Truesdale, 400 F. 2d 620; Eleazer v. Superior Ct., 1 Cal. 3d 847) is that, if production is ordered, the police and the District Attorney must undertake a reasonable effort, in good faith, to locate the informer. It may well be that the language in Goggins referring to production of the witness can be considered dicta and, therefore, not controlling (Carmody-Wait 2d, New York Practice, § 2:54), but, as stated in the next following section, “ if uttered by an appellate court it still must be given serious consideration So, given the choice between dismissing the charges on failure to produce and the taking of all reasonable steps in an attempt to locate the informer-witness, I hold, at least until a higher court rules to the contrary in a case involving production and not disclosure, that in cases involving factual situations such as those in Goggins and the case before this court, that the prosecution, in the event of nonproduction, must satisfy the court that it has made all reasonable efforts in a good-faith attempt to locate the informer. In the case before the court, I find on the facts stated that the prosecution has met this test, especially in view of the fact that they had no way of knowing at the time the informer left that they might be required to produce. In view of the language in Goggins, however, and even if that language can be treated as dicta, and further in view of the complete inadequacy of disclosure without production in situations such as those now before this court, prudence would seem to dictate the taking of steps by police agencies to enable them to remain in contact with their informers. While such procedures might not guarantee the ability to produce the witness, they should be such that would enable the prosecution to show that it has made every reasonable good-faith effort to produce the witness.
Defendant’s motions for an order directing the prosecution to produce Patricia Adams and to set aside the verdict because of its failure to do so are, therefore, in all respects, denied.