**UNITED STATES of America**

v.

**Michael G. THEVIS et al.**

**Crim. No. C78–180A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 4, 1979.

On Motion for Severance June 18, 1979.

Bobby Lee Cook, Cook & Palmour (on motions), Summerville, Ga., for Thevis.

Edward T. M. Garland, Garland, Nuckolls & Kadish, Atlanta, Ga., for Global and Fidelity on motions.

Austin Catts, Atlanta, Ga., for Evans on motions.

Hylton Dupree, Dupree & Staples, Marietta, Ga., for Mahar on motions.

B. Dean Grindle, Atlanta, Ga., for Hood on motions.

William L. Harper, U. S. Atty., Dorothy Kirkley, Craig Gillen, Asst. U. S. Attys., Atlanta, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

### I

This motion arises from submission of Defendant Michael G. Thevis's motion for Bill of Particulars pursuant to Rule 7(f), Federal Rules of Criminal Procedure, in which the defendant seeks 336 different particulars.[1] All defendants have adopted this motion.

---

1. The motion for Bill of Particulars has been supplemented by the defendant, but for purposes of the general discussion of the law applicable to this motion, no distinction will be made between the motion and the supplement to the motion. All cites to Rules are to the Federal Rules of Criminal Procedure.

■ The motion for Bill of Particulars is addressed to the sound discretion of the trial court, *Wong Tai v. United States,* 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927) and that discretion will not be reversed unless the court concludes that the "defendant was actually surprised at the trial and thus that substantial rights of his were prejudiced by the denial." 1 Wright, *Federal Practice & Procedure* § 130 at 295 (1969); *United States v. Mackey,* 551 F.2d 967, 970 (5 C.A.1977); *United States v. Bearden,* 423 F.2d 805 (5 C.A.1970), *cert. denied* 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (1970). Because of this wide discretion, few appellate courts have considered the proper scope of review presented by a motion for Bill of Particulars since each case is particularly limited to its own facts. *See,* 8 *Moore's Federal Practice* ¶ 7.06[2] at 7–35. While there has been widespread recognition of the issues presented by a motion for Bill of Particulars, *See,* 1 Wright, *Federal Practice and Procedure* § 129 (1969), there has been little general analysis of the manner in which those issues are to be resolved in a particular case.

■ To properly evaluate the specific requests for particulars, it is important to enunciate the principles by which the individual particulars will be analyzed. It is not as the government contends, a defense to a motion for Bill of Particulars that the granting of the motion may unnecessarily freeze the government's proof. *See, United States v. Neff,* 212 F.2d 297 (3 C.A.1954); *United States v. Flom,* 558 F.2d 1179 (5 C.A.1977).

■ On the contrary, this Court remains prepared to allow the government to amend its Bill of Particulars pursuant to Rule 7(f), and pursuant to the Court's inherent power to control the presentation of issues before it, *see, United States v. Smith,* 65 F.R.D. 464, (N.D.Ga.1974), a procedure is set forth in this order to allow the government to amend its Bill of Particulars, but on such terms as to avoid prejudicial surprise to the defendant. Nor is it a legitimate objection to a motion for Bill of Particulars that it calls for an evidentiary response or a legal theory of the government, when the furnishing of this information is necessary to prepare a defense and to avoid prejudicial surprise at trial. *United States v. Smith,* 16 F.R.D. 372, 375 (W.D.Mo.1954) (opinion by Justice—then Judge—Whittaker).

■ However, this is not to say that a motion for Bill of Particulars is a carte blanche to the defense to investigate the government's case, *United States v. Sherriff,* 546 F.2d 604, 606 *rehearing denied* 549 F.2d 204 (5 C.A.1977); *United States v. Leonelli,* 428 F.Supp. 880 (S.D.N.Y.1977), and the motion is not a discovery motion. *United States v. Isaacs,* 364 F.Supp. 895 (N.D.Ill.1973), *aff'd* 493 F.2d 1124 (7 C.A. 1979), *cert. denied* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146, *rehearing denied* 418 U.S. 955, 94 S.Ct. 3234, 41 L.Ed.2d 1178 (1974). This conclusion is reached in spite of the 1966 amendment to Rule 7(f) which deleted the requirement of a showing of cause as a predicate to the allowance of a Bill of Particulars.

■ The purpose of a Bill of Particulars is to more specifically define the charge set forth in the indictment, so that the defendant is apprised of the charges against him with sufficient clarity in order to allow him the opportunity to prepare his defense and to obviate prejudicial surprise to the defendant at trial. The Bill has an additional purpose in that further clarity may allow the defendant to raise a double jeopardy defense, if applicable. *United States v. Mackey,* 551 F.2d 967 (5 C.A.1977).

■ In essence, the question presented by a motion for a Bill of Particulars requires a two part analysis. If the particular requested is such that on its face its nondisclosure until trial would result in prejudicial surprise to the defendant or the preclusion of an opportunity for meaningful defense preparation, then the request must be granted. *See, United States v. Bearden, supra* at 809. *United States v. Sullivan,* 421 F.2d 676 (5 C.A.1970); *Hickman v. United States,* 406 F.2d 414 (5 C.A.1969); 1 Wright, *Federal Practice & Procedure* § 129 (1969).

On the other hand, if the requested particular is not such that the Court can determine on its own that nondisclosure until trial would result in prejudicial surprise or the preclusion of an opportunity for meaningful defense preparation, then the Court must balance the competing interests of the defense and the government. Where there is no prima facie case for disclosure, the defendant has the burden of showing by brief, affidavit or otherwise that nondisclosure would lead to prejudicial surprise or the obviation of opportunities for meaningful defense preparation. *See, United States v. Rubino,* 320 F.Supp. 613 (M.D.Pa.1970).

The showing required of the defense when there is no prima facie case for disclosure is that the particular requested is central information, either theory or evidence, which is necessary to allow the defendant to make his own investigation of the facts out of which the charge arose. *United States v. Manetti,* 323 F.Supp. 683, 696 (D.Delaware 1971). In essence, the defendant must show that without the requested particular his own investigation could not glean the facts or theory which would preclude prejudicial surprise or allow meaningful opportunities for defense preparation to meet the government's evidence and theories.

The defendant's showing must, perforce, be less than formal, legal proof, for it would be an impossibility to prove the existence of prejudicial surprise and the preclusion of meaningful defense opportunities when the underpinning for these conclusions is unknown and undisclosed. Rather it would be sufficient for the defense to show the logical probability that nondisclosure would yield prejudicial surprise at trial and the concomitant obviation of a meaningful opportunity for defense preparation.

The probability of prejudicial surprise or inadequate opportunities for defense preparation to the defendant must be balanced against the government's general right to prevent disclosure of its evidence and legal theories. *See, United States v.*

*Miller,* 210 F.Supp. 716 (S.D.Tex.1962). Furthermore, the Court recognizes the traditional concern of the government that criminal discovery would facilitate perjured testimony and witness intimidation. *See, United States v. Manetti, supra* at 695; Mr. Justice Brennan, "Remarks on Discovery," 33 F.R.D. 47, 56 (1963).

Obviously, the analysis of the competing interests and the defendant's showing is more akin to an art rather than a science. However, in resolving the areas of doubt when the competing interests are closely balanced, the interests of the defendant in disclosure must prevail. In 1966, Rule 7(f) was amended to strike the requirement of showing of cause prior to the granting of a motion for Bill of Particulars, and the Advisory Notes to the amendment reflect that change was "designed to encourage a more liberal attitude towards bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." This amendment requires that the defendant be given the benefit of the doubt in gray areas. *United States v. Manetti, supra* at 697.

## II

The indictment in this case is cast in ten counts, and the individual requests for particulars will be analyzed by counts.

Count I sets forth elements of an offense under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* The defendant requests 101 different particulars supplemented by twelve additional requests.

First, the government has agreed to respond to Requests 23, 24, 27, 28, 31, 32, 36, 37 and 44. Furthermore, Requests 53–57, 65–66, 68–69, 71–72, 79–89, 93, 95, 97, and 100 have been provided in response to other defense discovery efforts. Since the requested particulars have already been provided, it is not necessary to rule on those requests herein. *United States v. Smith, supra* at 469; 1 Wright, *Federal Practice and Procedure* § 129 (1969).

■ Request 2 of the supplemental motion is granted, but the government must only disclose whether it contends that the purported sale was illegal. Similarly, Request 8 is granted, but the government must only disclose whether it contends a pornography business is an illegality per se. Neither of those terms as used in the indictment are illegal per se, and the defendant would clearly be prejudicially surprised were the government to contend at trial that one or either of the terms were illegalities in and of themselves.

■ Requests 3 and 5 of the supplemental motion are granted in that both identify whether the government contends that additional unknown and undisclosed entities or individuals are part of the "pornography business" or "enterprise."

■ Requests 11, 16, 33 and 38 are granted in full and Request 19 is granted to the extent that the government must disclose the name of each corporation and the place of each incorporation. Each request seeks to have the government identify undisclosed individual and corporate members of the "enterprise," and unindicted individuals who were involved in the murder of Roger Underhill and Isaac N. Galanti. This request is clearly proper. *See, United States v. Ahmad,* 53 F.R.D. 194 (D.C.Pa. 1971) (identity required of unindicted coconspirators), for to do otherwise is to guarantee prejudicial surprise to the defendant if the government is allowed to produce undisclosed, unknown members of the enterprise and its activities to testify against the defendant.

Requests 52, 58, 61, 63, 64, 67, 70, 73, 74, 76, 78, 90–92, 94, 96, 99 and 101 of the motion and Request 11 and 12 of the supplemental motion each request particulars concerning the criminal forfeiture provisions of 18 U.S.C. § 1963.

These requests have given the Court special concern.

18 U.S.C. § 1963 provides for mandatory criminal forfeiture of interests acquired in violation of 18 U.S.C. § 1962. Succinctly stated, subparagraph (a) of 18 U.S.C. § 1962 provides that it is illegal to invest the profits from a pattern of racketeering in an interest in an enterprise; subparagraph (b) provides that it is illegal to acquire an interest in an enterprise through a pattern of racketeering.

Enterprise is defined by 18 U.S.C. § 1961(4) to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." In Count I of the indictment, the enterprise is defined as "a group of individuals associated in fact with various corporations to operate a pornography business through certain unlawful means including murder, arson, extortion, obstruction of justice and mail fraud." Indictment, page 3.

Paragraph 6 of the Count I sets forth various properties of defendant Michael G. Thevis which the government contends is subject to forfeiture under 18 U.S.C. § 1963 as property acquired and maintained in violation of 18 U.S.C. § 1962. Requests 52, 59–64, 67, 70, 73 and supplemental Requests 11(a) and 11(b) seek to have the government particularize how each of the properties identified in Paragraph 6 of the indictment were acquired and maintained in violation of 18 U.S.C.A. § 1962.

■ The indictment is insufficiently clear in that it does not detail any connection between the property to be forfeited under Paragraph 6 and the activities of the enterprise as defined in Paragraph 3. The government must disclose in general terms the nexus between the property to be forfeited and the enterprise, so that the defense may direct its investigation and trial preparation with sufficient direction as to what the government contends is the proscribed connection between that property and the enterprise in order to avoid prejudicial surprise or the obviation of an opportunity for meaningful defense preparation. To that extent, Request 52, 59–64, 67, 70–73, of the motion and Request 11(a), 11(b) of the supplemental motion are granted.

On the other hand, Request 76 and 78 seek to have the government disclose how the assets of defendants Global Industries, Inc. and Fidelity Leasing Corporation, respectively, were acquired and maintained in violation of 18 U.S.C.A. § 1962. The indictment specifies that both corporations were utilized to "manufacture 'peep show' machines, to sell sexually explicit literature, and to distribute 'adult oriented' films." Indictment, Paragraph 7(c). As both corporations are alleged to be members of the illegal enterprise, there is sufficient nexus between the assets of the two corporate defendants and the activities of the enterprise to apprise the defendant of the proscribed conduct, to allow opportunities for meaningful defense preparation and to prevent prejudicial surprise.

Requests 90–92, 94, 96, 99 and 101 all seek to particularize how various property interests identified in Paragraph 7 of the indictment were acquired and maintained in violation of 18 U.S.C. § 1962. However, the indictment apprises the defendant that the government alleges that these properties were utilized in violation of 18 U.S.C. § 1963(a)(2), i. e. that the properties were utilized to provide a source of influence over the enterprise. The defendant has been put on notice of the government's theory, and these requests are denied.

Requests 58 and 74 both are granted to the extent that the government must disclose the interest of defendant Thevis which is subject to forfeiture. Rule 7(c)(2).

Requests 10, 12–15, 17, 20–22, 25, 26, 29, 30, 34, 35, 39–43, 45–47, 49, 50, 51, 62, 75, 77, and 98 in the original motion and Requests 1, 4, 6, 7, 8, 9, 10, 11(b) and 12(c) in the supplemental motion are denied. These requests seek information, by and large evidentiary in nature, which is not required under Rule 7(f). The indictment is sufficiently specific that the defendant is apprised of the conduct which the government contends is illegal, and thus he has constructive notice of all facts which a diligent investigation would yield starting from the specific acts and occurrences set forth in the indictment. *See, United States v. Manetti, supra* at 693.

However, a corollary to this principle is that the government would be barred, absent amendment of the indictment, from introducing evidence of acts violative of the RICO statute not set forth in Count I since this undisclosed evidence of alleged criminal activity would, of necessity, be prejudicial to the defense in that it would be both prejudicially surprising and carry with it the concomitant denial of an opportunity for meaningful defense preparation. *See,* 1 Wright, *Federal Practice and Procedure,* § 127 (1969).

Requests 18, 48, and Supplemental Requests 11(c), 12(a), 12(b), 12(d) and 12(e) all seek the government's theory of criminal liability which is sufficiently set forth in the indictment to apprise the defendant of the proscribed activity, preclude surprise and allow meaningful opportunities for defense preparation. Those requests are denied.

Requests 103 through 255 and 1 through 7 of the supplemental motion concern Count II of the indictment. This is a charge alleging a conspiracy to violate RICO, 18 U.S.C. § 1961 *et seq.* The government has agreed to answer requests 153, 157, 159, 164 and 200, and through other discovery procedures, the government has disclosed the answers to Requests 139–149, 162–173, 175, 189–195, 196–198, 202, 207, 209–213, 216–219, and 248.

Requests 102, 150, 152, 156, 215, 253, 254, 255 and supplemental Requests 1(b), and 1(c) are granted to the extent that the government must disclose the unidentified members of the enterprise and conspiracy. *United States v. Ahmad, supra.* Similarly, the government must disclose the identities of the individuals requested in Requests 208, 226, and 239. These individuals, if they were present during the commission of the overt act set forth in the particulars could be unindicted aiders and abettors to the charge set forth in Count II. To the extent that the indictment does not disclose the known members of the conspiracy and the aiders and abettors to the con-

spiracy, it is insufficiently clear. It could hardly be anything but prejudicial surprise, if the government were allowed to prove the conspiracy without disclosing all the members of the conspiracy and the aiders and abettors to the acts of the alleged conspiracy. *See, United States v. Mackey, supra.*

■ Similarly, supplemental Request 1(a) is granted, for the defendant in the alleged conspiracy is entitled to know where the government contends the illegal agreement was made. *United States v. Tanner,* 279 F.Supp. 457, 476 (N.D.Ill.1967), *aff'd in part, rev'd in part,* 471 F.2d 128 (7 C.A. 1972), *cert. denied* 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972).

■ Supplemental Request 1(d) is granted. The government may not indict an individual for conspiracy, and seek to hold that defendant liable for acts of unindicted coconspirators in pursuit of the alleged purpose of the conspiracy without disclosing the acts of the undisclosed conspirators in furtherance of the conspiracy. Furthermore, to the extent that the government seeks to rely on overt acts of unindicted coconspirators, it must disclose the approximate date and nature of the overt acts. *See, United States v. Ahmad, supra.* To that extent supplemental Request 1(g) is granted.

■ However, supplemental Requests 1(e), 1(f), 1(h) and 1(i) are denied. The indictment sets forth with sufficient precision the purposes of the conspiracy, the specific acts of each defendant in furtherance of the conspiracy, and the date and time when each defendant entered the conspiracy.

■ Supplemental Requests 3 and 4 are granted to the extent that the government must particularize whether the activities so identified are contended to be ipso facto illegal.

■ Supplemental Request 7 is granted; it seeks to have the government disclose whether its theory of forfeiture is different in Count II (conspiracy to violate RICO) from Count I (substantive violation of RICO).

Requests 103, 179, 220, 221, 223, 225, 244 and 249 are denied at this time, each being a request for the location of various witnesses. The question raised in those requests is presently before the Court in a motion expressly raising that issue. A ruling is therefore reserved at this time.

■ Requests 104–138, 151, 154, 155, 158, 160, 161, 176–178, 180–188, 199, 201, 214, 222, 223–225, 227–238, 240–243, 245–247, and 250–252 and supplemental requests 2, 5 and 6 are denied. The requests seek illumination of the acts and the theories under which the government contends defendant Michael G. Thevis and the alleged coconspirators have violated 18 U.S.C. § 1962(d). The indictment is sufficient along with the overt acts set forth in it to apprise the defendant of the conduct which the government contends is illegal. As viewed by this Court, the indictment sets forth sufficient original facts to allow the defense to conduct their own investigation which should preclude any real prejudicial surprise at trial and allow the defense a meaningful opportunity to meet the government's proof.

Requests 256 through 263 concern Count III of the indictment. The government has previously provided the information requested in Request 258–261.

Count III is an indictment for mail fraud which charges defendants Michael G. Thevis and Global Industries, aided and abetted by William Ross Mahar, with utilizing the mails to defraud Gulf Insurance Company.

■ Request 256 seeks to have the government identify the undisclosed aiders and abettors. That request is granted.

■ Requests 257, 262 and 263 are not required to prevent prejudicial surprise or to allow meaningful opportunities for defense preparation. Those requests are denied.

Requests 264 through 281 seek a Bill of Particulars on Count VI. That count of the indictment alleges a conspiracy between de-

fendants Michael G. Thevis, Global Industries, and unindicted conspirators Jeff Lee and Andrew J. Bixby and others to prevent Roger D. Underhill from communicating with criminal investigators in violation of 18 U.S.C. § 1510.

■ Request 264 seeks the identities and location of the undisclosed coconspirators. That request is granted as to the identities of the undisclosed coconspirators. Requests 269 and 280 seek to have the government disclose any persons who were present to overt acts A and G. Those individuals may be aiders and abettors to the criminal activity set forth in Count VI, and their identities, if any such persons were present, must be disclosed.

■ Requests 265–267, 270–279 and 281 are denied in that each seeks further elaboration of the allegations of the indictment or of the overt acts which is not required under Rule 7(f).

Count VII of the indictment charges Michael G. Thevis and Global Industries aided and abetted by Andrew J. Bixby and Jeff Lee with obstruction of justice in violation of 18 U.S.C. § 1510. Request 282 seeks to have the government disclose the specific means of intimidation, force and threats of force which were allegedly utilized by the defendants in violation of 18 U.S.C. § 1510.

■ The indictment basically tracks the language of the statute, and it does not reveal the acts of the defendants which the government contends is violative of the statute. Request 282 must be granted, and the government must disclose its contention as to the illegal acts in a manner similar to that set forth in Count VI of the indictment. Request 283 is denied; the answer to Request 282 should be sufficient to allow the defense with diligent independent investigation to preclude any real prejudicial surprise from the denial of Request 283.

■ The particulars requested concerning Count VIII have already been provided through other discovery. Accordingly, Requests 284 through 304 are denied.

■ Count X alleges that Michael G. Thevis, Alton Bart Hood, Anna Jeanette Evans, and Fidelity Equipment Leasing Corporation conspired in violation of 18 U.S.C. § 241 to violate the civil rights of Roger Dean Underhill. Request 305 seeks the identity of any unindicted coconspirators known to the government, and it must be granted. Requests 306–314 seek further elaboration of the acts set forth in the indictment, and they must be denied. The indictment is explicit enough to allow the defense to direct their investigation and defense efforts with knowledge of what the government contends the illegal activity was.

■ Request 315 is denied; the overt acts in Count X of the indictment need no elaboration nor clarification.

■ Request 316 is granted to the extent that prior requests have not provided the information. Request 317 is denied; the activities of the two corporate defendants are set forth with sufficient precision to apprise them of the government's contention of the illegal conduct. No further elaboration is necessary to allow the opportunity for meaningful defense preparation.

### III

In denying those individual requests, the Court does not make that denial with prejudice. In essence, the denial of a particular request is a finding by the Court that there is no prima facie case for disclosure in order that the defendant may not be prejudicially surprised at trial and that he may not be denied a meaningful opportunity to prepare his defense.

The defense is free to reapply for the denied particulars. However, prior to reapplication, the defense must confer with the government and both sides must make a good faith effort to informally resolve the denied requests. This conference shall be within ten days of this order. If after conference, the parties are still unable to resolve the requested particulars, the defendant may reapply for the particulars on which no agreement has been reached. The

defense must reapply within twenty days from this order, and its brief must address each specific request applying the standards set forth in Part I of this order. The government shall respond to each requested particular and set forth its rationale as to why the request should not be granted. This reply shall be filed within ten days of the defense's reapplication.

The Court recognizes that there is a danger in requiring the government to provide a Bill of Particulars, for it could unnecessarily freeze the government's proof at trial. *See, United States v. Flom, supra.*

The Court shall allow the government to amend the Bill of Particulars without formal motion by filing with the Court and defense counsel the amendments to the Bill of Particulars. If the defense believes that it is prejudicially surprised by the amendment, it may apply to the Court for a protective order to limit the use of the information in the amendment at trial. At the time such a motion is made, the Court's inquiry will be: (1) when did the information disclosed in the amendment become or should have become available to the government; (2) why was it not disclosed to the defense earlier; (3) was the defense prejudicially surprised by the amendment; and (4) can the prejudicial surprise, if any, be obviated by judicial action?

The Court is aware of the complexities presented in the preparation and trial of this case. In order that the Court may stay abreast of the developments in this case and in order that the Court may resolve as many conflicts as possible without the necessity of formal motions and responses, the Court shall have biweekly status conferences with all counsel and all defendants present. The first such conference shall be on June 29, 1979 at 10:00 a. m. and every two weeks thereafter at the same time. The Court will advise all counsel as to whether the conference will be in Rome or Atlanta.

## ON MOTIONS FOR SEVERANCE

Defendants Anna Jeanette Evans, Alton Bart Hood, Fidelity Equipment Leasing Corporation, "Fidelity", and Global Industries, Inc., "Global", have each moved for severance under Rule 8(b) or, in the alternative, Rule 14, F.R.Cr.P.

The indictment is cast in ten counts.[1] The first count charges a substantive violation of RICO, while the second alleges a conspiracy to violate RICO. The remaining counts each allege other federal criminal violations. While each of the other counts is an independent charge, each is also a predicate offense to the two RICO counts.

Defendant Evans seeks severance as to Count X, as does defendant Hood. Each seeks a separate trial as to all other defendants. Defendants Fidelity and Global seek severance from each other defendant, each other, and severance of each count.

### I

Severance under Rule 8(b),[2] is not a matter of discretion, but a matter of right

---

1. Count I charges a substantive violation of the Racketeer Influenced and Corrupt Organizations Act "RICO", 18 U.S.C. § 1961 *et seq.* The defendants to that count are Michael G. Thevis, William Ross Mahar, Fidelity, and Global. Count II alleges a conspiracy to violate RICO, 18 U.S.C. § 1962(d). The same defendants are charged. Count III accuses defendants Thevis and Global, aided and abetted by defendant Mahar, of mail fraud in violation of 18 U.S.C. § 1341. Count IV charges defendant Mahar with possession of a destructive device in violation of 26 U.S.C. §§ 5861(d) and 5871. Count V alleges that defendant Mahar murdered James Mayes in violation of 18 U.S.C. § 844(i). A conspiracy to obstruct justice is charged against defendants Thevis and Global in viola-

tion of 18 U.S.C. § 371 in Count VI. Count VII, on the other hand, accuses defendants Thevis and Global with obstruction of justice in violation of 18 U.S.C. § 1510. Count VIII alleges that defendants Thevis, Global and Fidelity conspired to obstruct justice in violation of 18 U.S.C. § 1510 by murdering Roger D. Underhill. Count IX is the charge for the substantive offense of obstruction of justice. Defendants Thevis, Fidelity & Global are accused of violating 18 U.S.C. § 1510. Count X accuses defendants Thevis, Fidelity, Evans and Hood with conspiring to violate 18 U.S.C. § 241.

2. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or

when there has been misjoinder. *United States v. Marionneaux*, 514 F.2d 1244, 1248 (5th Cir. 1974), *cert. denied* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189.

Fidelity and Global each seek severance on the ground that there is an insufficient nexus between the counts in which they are charged and the remainder of the indictment. It is their contention that the proof of those counts in which they are charged is not co-extensive with the proof of the remaining counts. *See, United States v. Gentile*, 495 F.2d 626, 630 (5th Cir. 1974); *United States v. Levine*, 546 F.2d 658, 666 (5th Cir. 1977). These arguments are absolutely without merit.

Under Rule 8(b), joinder is proper if the defendants are alleged to have participated in the "same series of acts or transactions constituting the offense or offenses." Defendant Thevis is alleged to be the chief executive officer of both Global and Fidelity. Together, those defendants along with defendant William Ross Mahar are alleged to be members of an enterprise. The gravamen of the first two counts is that the defendants did (Count I) or conspired to (Count II) conduct the affairs of the enterprise through a pattern of racketeering. Counts III through X set forth the charges which, while independent, substantive crimes in themselves, are the predicate offenses for the two RICO counts. Counts III through X constitute the "pattern of racketeering." 18 U.S.C. § 1961(5).

■ The predicate offense counts are not misjoined with the RICO counts, because the predicate offense counts, by definition, are related to the affairs of the enterprise. As the Fifth Circuit noted in *United States v. Elliot*, 571 F.2d 880, 899 n. 23 (5th Cir. 1978), *cert. denied* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1979).

The gravamen of the offense described in 18 U.S.C. § 1962(c) is the conduct of the enterprise's affairs through a pattern of racketeering activity. Thus the Act [RICO] does not require a type of related-

ness: the two or more predicate crimes must be related to the affairs of the enterprise but need not be related to each other.

By definition, the proof offered towards Counts III through X will be co-extensive with that offered as to Counts I and II. Furthermore, there is a logical nexus between Counts III through X and Counts I and II, because the former charges are the "pattern of racketeering" or the "same series of acts or transactions" out of which the criminal liability of Counts I and II arises. *United States v. Campanale*, 518 F.2d 352, 359 (9 C.A. 1975), *cert. denied* 423 U.S. 1050, *re'h denied* 424 U.S. 950, 96 S.Ct. 1422, 47 L.Ed.2d 356.

Evans and Hood's motion for severance under Rule 8(b), presents the issue of whether one not charged with a RICO violation may be joined with other RICO defendants, because the crime in which the movant is charged is a predicate offense to the RICO violation.

Defendants Evans and Hood urge that joinder is proper when all of the offenses and "the proof of time, place, modus operandi, participants, motive and all the requisite elements would be co-extensive." Defendant Evans' brief, page 8. Since the same proof as to Count X will not essentially establish the proof for the other acts or transactions, defendants Evans and Hood conclude that misjoinder results.

■ The Court does not construe Rule 8(b) in such a myopic manner. Misjoinder is not a logical concomitant to the fact that the RICO count will require proof beyond that required of Count X. *See, United States v. Mandel*, 415 F.Supp. 1033, 1047 (D.Md.1976). If Count X is part of the same series of acts or transactions as those with which the other defendants are charged, then joinder is proper.

The charge alleged in Count X is a predicate offense as to defendants Thevis and Fidelity. The indictment alleges that the

transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and

all of the defendants need not be charged in each count.

particular crime charged in Count X was a part of the "pattern of racketeering" by which the affairs of the enterprise were illegally conducted.

■ Although defendants Evans and Hood are not charged with violations of RICO, this does not affect the allegation that the crime with which they are charged is part of the same series of transactions with which other defendants are charged. The same series of acts is the alleged commission of the various predicate offenses by which the affairs of the enterprise were illegally advanced. The fundamental thrust of the defendant's argument is that the "same series of acts or transactions" test of Rule 8(b) requires a closer interrelation than the "pattern of racketeering activity" which is the essence of a RICO indictment. This Court disagrees.

As noted by the Court in *United States v. DePalma*, 461 F.Supp. 778, 789 (S.D.N.Y. 1978).

> It would seem incongruous and inappropriate to construe a 'series of transactions' under Rule 8(b) so as to require a closer interrelationship than would obtain under 'a pattern of racketeering activity' and thus defeat the Congressional intent. In fact, Congress has designated each alleged act here as being part of a 'pattern' of racketeering activity. 18 U.S.C. § 1961(1).

The fact that a defendant is not charged with more than the one predicate offense, "and therefore not charged with a RICO violation, is not dispositive. If a person was involved in one of the two predicate acts that person may be joined with those

charged with the same predicate acts and the other related act." *DePalma, supra* at 789.

This result is consistent with the holdings of the Fifth Circuit on which the defendants so strenuously rely.[3] "The relatedness of the facts underlying each offense," *Gentile, supra* at 430, is that each is a part of the series of acts entered into by the enterprise to promote its affairs. The obstruction of justice offenses charged in Counts VI through IX and the murder conspiracy charged in Count X each involved efforts to protect the enterprise by preventing disclosure of its other illegal activities such as the murder of Mayes. Thus the concealment of some of the offenses charged in the indictment furnished the motive for the commission of others and all related to the growth or preservation of the enterprise's pornography business.

■ Since Count X and Counts III through IX are the acts by which the enterprise is alleged to have furthered its affairs in violation of 18 U.S.C. § 1962, it is part of the same series of acts or transactions, and joinder of Count X with the other charges and defendants is proper under Rule 8(b).

## II

As to Rule 14,[4] Fidelity and Global advance the contention that pre-trial publicity and the admissibility of a co-defendant's confession require the Court to grant a discretionary severance.[5]

These arguments are unpersuasive, and the Court denies the motion for severance.

---

3. *United States v. Gentile, supra; United States v. Levine, supra; United States v. Marionneaux, supra.* None of the defendants in these cases were indicted with RICO violations.

4. If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for sever-

ance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

5. Fidelity and Global contend that defendant Thevis' "confession" to prison inmate Bernard McCarthy raises Sixth Amendment confrontation issues as to each of them. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The remedy for excessive pre-trial publicity is a motion for change of venue[6] and voir dire of prospective jurors. Severance under Rule 14 is not a remedy to combat unfavorable pre-trial publicity; rather its application is directed to the situation when after a fair and impartial jury has been chosen for a trial combining defendants or offenses and it becomes apparent that "as a practical matter, the nature[s] of the offenses or of the evidence are of such a character or are so complicated that a jury could not reasonably be expected to separate the indictments or the defendants and to evaluate the evidence properly and individually against each . . . ." *United States v. Harris*, 458 F.2d 670, 673 (5th Cir. 1972), *cert. denied* 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145.

Nor is it a ground for discretionary severance that defendant Thevis' "confession" will deprive defendants Fidelity and Global of their Sixth Amendment confrontation rights. After reviewing the deposition of Mr. McCarthy, which was taken pursuant to Rule 17, the Court notes that neither defendant Fidelity or Global were mentioned in the alleged "confession" by defendant Thevis and further that no incriminating or other references were made to either defendant. There is no *Bruton* problem with this statement, *United States v. Lobo*, 516 F.2d 883, 884 (2nd Cir. 1975), *cert. denied* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975), and, accordingly no ground for a discretionary severance under Rule 14.

In support of their motion for severance under Rule 14, Defendants Evans and Hood separately argue that four different factors require severance: (1) the admissibility of proof in a joint trial which would not be admissible against them in a severed trial; (2) the economic burden to the defendants from participation in a lengthy trial when a severed trial would occupy only a fraction of the time required of the joint prosecution; (3) the disparity in the weight and volume of evidence to be offered against defendant Thevis as opposed to that to be offered against defendant Evans and Hood; and (4) the impact of pre-trial publicity.

These arguments are addressed to the sound discretion of the trial court, and absent abuse of that discretion, the decision as to severance will not be reversed. *United States v. Perez*, 489 F.2d 51 (5th Cir. 1973), *cert. denied* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). "The test in this circuit for reviewing the denial of a severance is that the defendant must be unable to obtain a fair trial without a severance and must demonstrate compelling prejudice against which the trial court will be unable to afford protection." *United States v. Swanson*, 572 F.2d 523, 528 (5th Cir. 1978); *cert. denied* 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978).

At this time, the Court is unwilling to hold that the evidence to be presented in this case is such that "a jury could not reasonably be expected to separate the indictments or the defendants and to evaluate the evidence properly and individually against each . . . ." *Harris, supra* at 673. In reaching this conclusion, the Court does not rely so much on the weight of prior decision,[7] but rather its understanding of the evidence and the efforts which it is

---

**6.** Defendants Fidelity and Global have adopted defendant Thevis' motion for change of venue. It should further be noted that this motion was granted.

**7.** *See, United States v. Bedgood*, 453 F.2d 988 (5th Cir. 1972) (no abuse in denying severance when evidence admitted against one defendant would not have been admissible against other defendant). *United States v. Dioguardi*, 332 F.Supp. 7 (S.D.N.Y.1971) (contention that trial would be lengthy and hence costly to defendant was not in itself sufficient basis for severance). The Court notes that defendant Evans has esti-

mated ten days to try Count X, but controverting this estimate is the government's statement that much proof of the remaining nine counts would be admissible to show the motive for the conspiracy charge in Count X. *United States v. Brady*, 579 F.2d 1121 (9th Cir.) (severance for disproportionate proof denied); *United States v. Mardian*, 178 U.S.App.D.C. 207, 546 F.2d 973 (1976) (severance necessitated, in part, by disproportionate proof). *See generally*, 1 Wright, *Federal Practice and Procedure* § 223 (1969).

prepared to take "to individualize each defendant in his relation to the mass." *Kotteakos v. U. S.*, 328 U.S. 750, 773, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557 (1946), quoted in *Elliot, supra* at 905. At this time, defendants Evans and Hood have not discharged the burden placed upon them in seeking a discretionary severance under Rule 14. *See, United States v. Grimm*, 568 F.2d 1136 (5th Cir. 1978).

The Court is cognizant of "its continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960); *United States v. Johnson*, 478 F.2d 1129 (5th Cir. 1973); and this Court remains ready to enter such an order, if it becomes apparent that a jury is incapable of isolating the proof among the several defendants and charges.

As this issue will undoubtedly be raised again at some future point, the Court will enunciate the principles by which it will analyze any future motion for severance under Rule 14.

At the outset, it should be noted that prior to trial the policy in this circuit is that "the interest of judicial economy and the policy favoring joint trials in conspiracy cases [8] must be weighed against the defendant's allegations of prejudice." *Swanson, supra* at 528 (1978). While this balancing test may conflict with the spirit of Rule 14,[9] it is acceptable only as long as it is limited to allegations of prejudice. Once, the *allegata* is transformed at trial into *probata*,

there can be no balancing test. To do otherwise is to accept the principle that a modicum of prejudice to an individual defendant is acceptable as long as governmental economy and convenience can be advanced. As the Third Circuit Court of Appeals stated in *United States v. Boscia*, 573 F.2d 827, 833 (3rd Cir. 1978), *cert. denied* 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 411 (1978):

> [N]o defendant should ever be deprived of a fair trial because it is easier or more economical for the government to try several defendants in one trial rather than in protracted multiple trials. The goal of the judicial process is not to decide cases as quickly and inexpensively as possible.

Thus, in reviewing motions for discretionary severance under Rule 14 after the initiation of testimony, the Court cannot balance the prejudice arising from a joint trial [10] against judicial and governmental convenience, but rather it must analyze the weight and volume of the evidence to discern if a reasonable jury with appropriate instructions from the Court can distinguish the defendants, the offenses, and the evidence directed against each. In consideration of this issue, the Court notes that the prejudice arising from a joint trial must be beyond the curative powers of the Court,[11] *United States v. Becker*, 569 F.2d 951 (5th Cir. 1978) *cert. denied* 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978), and the Court in granting the motion must determine that the defendant is unable to

---

8. For purposes of severance, a RICO indictment charging violation of RICO and the individual predicate offenses as well can be analogized to a conspiracy indictment which includes counts for conspiracy as well as substantive crimes.

9. As Judge Alexander Holdzoff, who was a member of the Advisory Committee which drafted the original criminal rules, noted: "It was the purpose of the Committee to make it possible for Federal judges to prevent a mass trial, because a mass trial is contrary to the basic principles of our jurisprudence." *United States v. Gaston*, 37 F.R.D. 476, 477 (D.C.D.C. 1965). In commenting on that statement and the decisions under Rule 14, Professor Charles Wright sardonically noted that "[t]he case law gives no confident feeling that that purpose has

been achieved." 1 Wright, *Federal Practice and Procedure*, § 233, at 447 (1969).

10. Inherent in a joint trial is the opportunity "for unfairness when evidence submitted as to one crime . . . may influence the jury as to a totally different charge." *Spencer v. Texas*, 385 U.S. 554, 562, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967).

11. Implicit in this acknowledgement is the assumption that jurors listen, accept and act on admonitory instructions from the Court. Without relying solely on this assumption, the Court is prepared to enter such future orders as are necessary to promote an orderly, nonprejudicial presentation of the evidence.

obtain a fair trial without severance. *Swanson, supra* at 528.

Accordingly, the motions for severance of Anna Jeanette Evans, Alton Bart Hood, Fidelity Leasing Corporation, and Global Industries, Inc. are denied.