UNITED STATES of America, Plaintiff,

v.

Thomas LAVIN, Donald Erskine, Stanley Balodimas, Vincent Battista, Bartley Burns, Laurence Kelly, Kenneth Valerugo, and John Vandenbergh, Defendants.

No. 80 CR 517.

United States District Court,
N. D. Illinois, E. D.

Jan. 16, 1981.

**1358**

Stephen L. Senderowitz, John F. Podliska, Scott Lassar, Asst. U. S. Attys., for the United States.

George Murtaugh, Jr., Coghlan, Joyce & Nellis, Anthony P. Pacelli, James N. Vail, George C. Rantis, Chicago, Ill., William O'Malley, O'Malley, Royce & Hopkins, David M. Hartigan, Hartigan & Ward, Joseph Lamendella, Betar & Lamendella, Chicago, Ill., Sam Amirante, McLennon, Nelson, Gabriele & Nudo, Park Ridge, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

In the present case the United States has charged nine [1] defendants with, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and mail fraud, 18 U.S.C. § 1341.[2] The indictment arises out of an alleged conspiracy at the Cook County Board of [Tax] Appeals. In Count 1, the RICO count, defendants Thomas Lavin and Donald Erskine, Deputy Commissioners of the Board, are alleged to have taken bribes from certain taxpayers in return for fraudulently disposing of the taxpayers complaints resulting in unwarranted property assessment reductions. The same count alleges that defendants Stanley Balodimas, Vincent Battista, Bartley Burns, Laurence Kelly, Kenneth Valerugo, John Vandenbergh and others acted as "runners" soliciting property owners who wished to obtain property assessment reductions pursuant to this scheme. Counts 2 through 82 of the indictment alleged different mailings to perpetrate the fraud described above. At issue here is a series of pre-trial motions filed by the defendants to which the

1. In addition to the defendants mentioned herein, Mr. Jimmie Smith, a hearing officer and office manager at the Board of Appeals was indicted on charges of mail fraud and RICO violations in Counts 1 and 2 through 11. Defendant Smith entered a plea of guilty on October 8, 1980 and is not involved in any of the current pre-trial motions.

2. In all, the indictment consists of 90 counts. In addition to the charges outlined above defendant Lavin has been charged with making false statements before the grand jury in violation of 18 U.S.C. § 1623 (Count 83) and federal income tax violations, 26 U.S.C. §§ 7203, 7206(1) (Counts 86–88). Defendant Kelly has been charged with obstruction of justice in violation of 18 U.S.C. § 1510 (Counts 84–85) and defendant Erskine also is accused of income tax violations, 26 U.S.C. §§ 7203, 7206(1) (Counts 89–90).

government has replied. The majority of these motions either resulted in government compliance or are amenable to summary resolution, and they have been so disposed in a separate order, of this date. The remaining motions are considered *seriatim* as set forth below.

Initially, however, the court notes that certain of the defendants have filed motions to adopt the filings of the other defendants. These motions have previously been granted. Accordingly, in resolving and discussing the merits of the motions that follow, the court will consider them collectively, without regard to the individual defendant who may have raised the issue.

## I. MOTIONS TO DISMISS THE INDICTMENT

Defendants have raised several specific challenges to the RICO count as applied to them. In particular, they argue that the Board of Tax Appeals cannot be considered an "enterprise" within the meaning of the statute. In addition, certain of the defendants who are not actually employees of the Board submit that they are not "associated with" the enterprise as contemplated by the legislation. Neither of these arguments can be sustained.

 The question of whether the Board is an "enterprise" as defined by 18 U.S.C. § 1961(4) already has been settled by the Seventh Circuit. In *United States v. Grzywacz*, 603 F.2d 682 (7th Cir. 1979), the Court of Appeals held that § 1961(4) contemplated that public entities may constitute enterprises through which racketeering is conducted, 603 F.2d at 686. The Board of Appeals meets this description and as such, defendants' claims are without merit.

█ Moreover, in *Grzywacz*, the panel emphasized repeatedly that in enacting RICO, Congress "intended to frame a widely encompassing enactment to protect both the public and private sectors from the pervasive influences of racketeering." 603 F.2d at 682. In view of the Seventh Circuit's expansive perspective regarding RICO, the court is persuaded that defendant's suggested interpretation of the meaning of "associated with" is too narrow. Such a construction conflicts with not only the explicit congressional mandate to broadly construe the legislation but also with the plain meaning of the term "associate." [3] Still further, the language of the statute itself at least inferentially defines "associated with" as "direct or indirect participation in the conduct of the enterprise." 18 U.S.C. § 1962(c) [4]. Accordingly, it is held that even those defendants not directly employed by the Board of Appeals are within the ambit of the statute since by soliciting and accepting property assessment complaints they were "associated with" this enterprise.

In their motions to dismiss, defendants have raised still other objections to the indictment. For example, defendants claim that the indictment must be dismissed because it fails to contain a "plain, concise and definite written statement" of the essential facts constituting the defenses charged in violation of Rule 7(c) of the Federal Rules and Criminal Procedure ("Fed.R.Crim. Pro."). Defendants also contend that the charges in the indictment were duplicitous and are thus infirm under the principles of *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

---

3. Webster's International Dictionary, Third Edition (Unabridged) (1961) pp. 132, defines this term as follows:

> 1 *associate*... vt la: to join often in a loose relationship as a partner, fellow worker, colleague, friend, companion, or ally...4: to join or connect in any of various intangible or unspecified ways
> 2 *associate*...adj l: closely connected, joined or united with another as in interest, function, activity or office...
> 3 *associate* n-s l...a: one who shares with another an enterprise, business or ac-

tion. .c: one who is frequently in company with another

4. In *Grzywacz* the Seventh Circuit explicitly endorsed the interpretations of RICO fashioned by the Third and Fifth Circuits. Both of these courts have broadly construed the phrase "associated with" so as to encompass all of the defendants here. *United States v. Elliot*, 571 F.2d 880 (5th Cir. 1978); *United States v. Forsythe*, 560 F.2d 1127 (3d Cir. 1977). *See also, United States v. Swiderski*, 593 F.2d 1246 (D.C. Cir.1978).

■ In the court's view, however, the indictment may be sustained as written. It is a matter of hornbook law that the prohibitions against vague and duplicitous indictments serve to protect the defendants' rights guaranteed by the Sixth and Fifth Amendments to (1) be adequately informed of the nature and cause of the charges against them so that they can prepare their defenses; and (2) be protected against multiple prosecutions for the same offense. *United States v. Ray*, 514 F.2d 418 (7th Cir. 1975); *United States v. Climatemp, Inc.*, 482 F.Supp. 376, 384 (N.D.Ill.1979).

■ An examination of the indictment indicates that the standards of Fed.R.Crim. Pro. 7(c) have been satisfied here. The essential facts and actions of the defendants have been set forth. And the indictment sufficiently evinces the elements which comprise the mail fraud and RICO violations. In short, defendants have been provided with enough information both to inform them of the nature of the charges against them and to shield them from the risk of double jeopardy.

■ Nor is the indictment multiplicitous. The fact that two separate substantive offenses—RICO and mail fraud—have been alleged from a single conspiratorial scheme does not flaw the indictment. As the court noted in *United States v. Brighton Bldg. & Maintenance Co.*, 435 F.Supp. 222, 229 (N.D. Ill.1977), upholding an indictment charging criminal Sherman Act and mail fraud offenses:

> It is not rare that one series of actions by a defendant can give rise to more than one violation of the laws of a jurisdiction and each violation can be punished.

■ Moreover, the government's decision to prosecute each individual fraudulent property assessment complaint as a separate count of the indictment is not improper. The Court of Appeals recognized in *United States v. Joyce*, 499 F.2d 9, 18 (7th Cir. 1974), that each distinct mailing involved in the alleged scheme may support a separate mail fraud charge. *See also, Unit-*

ed States v. Bush, 522 F.2d 641, 649 (7th Cir. 1975); *United States v. Brighton Bldg. & Maintenance Co., supra* at 229 n.10.[5]

Finally, defendants challenge the indictment insofar as it alleges mail fraud against them under the facts of this case. When defendants' arguments are consolidated, they essentially raise two points. First, because Illinois law requires the mailing of property assessment bills, the use of the mails could not have been, under any circumstances, for the purpose of executing the fraud. Second, since the scheme did not depend upon receipt of the fraudulent bills by the property owners, the scheme was complete prior to the mailings and thus the mailings were not in furtherance of the fraud. Of these two arguments, the former is legally incorrect and the latter is factually unsound.

■ Initially, the mere fact that the mailings were required by state law does not necessarily operate to take the instant scheme from the reach of 18 U.S.C. § 1341. *United States v. Feinberg*, 535 F.2d 1004, 1009 (7th Cir. 1976). Moreover, the scheme as described by the indictment was far from complete prior to the deposit of the assessment notices in the U.S. mail. Rather, as the government points out, the conclusion of the scheme was dependent on payments by the property owners who, in turn, tendered no money until these notices were received. And, the failure to pay by any property owner would have resulted in the cancellation of the reduced assessment.

In addition, the government has charged defendants with participating in a scheme intended to defraud the citizens of Cook County both of their rights to the loyal, faithful and honest services of the employees of the Board of Appeals as well as their rights to have the business of the Board conducted honestly, impartially and free from corruption. So defined, the fraud could not possibly have been complete prior to the mailings since the mailings were part of defendants' responsibilities in the dis-

---

5. Defendant Erskine has raised obliquely a slightly different argument on this point. However, this argument, based on a tortured read-

ing of Count 1 (i. e., that Count 1 alleges separate conspiracies, one to violate RICO and one to conceal) is also without merit.

charge of their duties at the Board. Accordingly, for the reasons stated above, all of the motions to dismiss the indictment are denied.

## II. MOTIONS FOR A BILL OF PARTICULARS

Virtually all of the defendants in this case originally filed requests for a bill of particulars pursuant to Rule 7(f) Fed.R. Crim.Pro. Many of the particulars requested, however (especially those in the nature of an explanation of the indictment), have been answered voluntarily by the prosecution. But on certain matters the parties remain at loggerheads and these issues are addressed herein.

In this as in other cases the functions of a bill of particulars under Rule 7(f) are threefold. It serves to provide the defendants with those additional facts necessary to prepare a proper defense. The bill prevents prejudicial surprise at trial and may protect defendants from possible double jeopardy. *United States v. Climatemp, Inc.,* 482 F.Supp. 376, 389 (N.D.Ill.1979); *United States v. Mahany,* 305 F.Supp. 1205, 1209 (N.D.Ill.1969). Applications for bills of particulars are addressed to the sound discretion of the trial court, *Wong Tai v. United States,* 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927), and that discretion will not be reversed absent a judicial findings that substantial rights of the defendant were prejudiced by actual surprise at trial. *United States v. Mackey,* 551 F.2d 967 (5th Cir. 1977). At least one result of the wide latitude afforded trial courts is that since the exercise of this discretion is fact-sensitive, few concrete standards governing these motions have developed and the available precedent is of limited utility.

This, of course, is not to say that the court is totally without guidance in resolving the instant motion. Certain factors, including the complexity of the offense charged, the clarity of the indictment and the degree of discovery available to the defendant without the bill are relevant to this issue. *See e. g., United States v. Thevis,* 474 F.Supp. 117 (N.D.Ga.1979); *United States v. Climatemp, Inc., supra* at 389; *United States v. Magaw,* 425 F.Supp. 636

(E.D.Wis.1977). Moreover, defendants cannot use a bill of particulars to discover the theory or evidentiary details of the government's case. *United States v. Climatemp, Inc., supra* at 390.

Perhaps the most useful summary of the inquiry posed by a motion for a bill of particulars was stated by the court in *United States v. Thevis, supra,* where the court noted:

In essence, the question presented by a motion for a Bill of Particulars requires a two part analysis. If the particular request is such that on its face its nondisclosure until trial would result in prejudicial surprise to the defendant or the preclusion of an opportunity for meaningful defense preparation, then the request must be granted. [Citations omitted].

On the other hand, if the requested particular is not such that the Court can determine on its own that nondisclosure until trial would result in prejudicial surprise or the preclusion of an opportunity for meaningful defense preparation, then the Court must balance the competing interests of the defense and the government. Where there is no prima facie case for disclosure, the defendant has the burden of showing by brief, affidavit or otherwise that nondisclosure would lead to prejudicial surprise or the obviation of opportunities for meaningful defense preparation. [Citation omitted].

*United States v. Thevis,* 474 F.Supp. at 123–124.

When the considerations outlined above are applied to the circumstances here, the conclusion inures that defendants' motions should be denied. First, it is noted that, even when viewed in their most favorable light, the requested particulars skirt the fine line between permissible inquiries and improper attempts to discover the evidentiary details of the prosecution's case. For instance, representative of the particulars sought in this case is the following excerpt from the motion of defendant Erskine.

9. With respect to Count One, Paragraph 16, provide the following:

(a) Identify the property owners who paid fees to the runners.

(b) State where, when and in what manner the property owners paid fees to the runners.

(c) State where, when and in what manner the runners would split the fee with Thomas Lavin and Donald Erskine.

Not only, however, are the particulars sought overly detailed, but also they are unnecessary in this instance. As noted earlier, the present indictment amply sets forth a description of the acts and circumstances that underlie the charges against defendants. As such, this is not a case where absent a bill of particulars defendants would largely be in the dark as to the evidence to be presented against them.

Finally, and most importantly, the broad discovery already afforded defendants voluntarily by the prosecution virtually vitiates any meaningful possibility of undue surprise at trial. The government has represented that it previously had made available to defendants all statements and documents relevant to this case. Subsequent to the indictment, the government turned over all statements of co-defendants and all interviews by the FBI of any relating in any way to each of the defendants. Also, the government has made available for inspection all documentary evidence in its possession, including the complaint folders from the Board of Appeals which indicate the owner of the property, the name of the complainant, the complainant's attorney and various information about the past and current assessed valuation of the property. Finally, the prosecution has disclosed to the defense the names of all co-conspirators and co-schemers, whether indicted or not.

The inference to be drawn from the disclosure previously made on a voluntary basis is that while the bills sought here might possibly be helpful in preparing a defense, they are not at all necessary. In essence, defendants have failed to demonstrate, by affidavit or memoranda, that their own investigation based on the evidence available to them would not be sufficient to prepare an adequate defense or protect them from prejudicial surprise at trial. *United States v. Thevis*, 474 F.Supp. 117, 124 (N.D.Ga. 1979). Accordingly, the motions for bills of particulars are denied.

### III. MOTIONS TO STRIKE

Defendants have moved to strike paragraph 18 of Count 1 of the indictment. This particular paragraph reads as follows:

18. It was further part of the conspiracy that property assessments were corruptly reduced in over two thousand cases for a total reduction in property assessments of approximately thirty million dollars.

Fed.R.Crim.Pro. 7(d) permits the court to strike, as surplusage, "immaterial and irrelevant allegations ... which may, however, be prejudicial." *United States v. Climatemp, Inc., supra*, at 391, quoting, Advisory Committee Note to Fed.R.Crim.Pro. 7(d). While language in the indictment which covers information which the government, in good faith, intends to prove at trial cannot be stricken as surplusage, no matter how prejudicial it may be, 482 F.Supp. at 391, it is apparent that the government does not fully intend to prove the allegations of paragraph 18.

In its memorandum in opposition to defendants' discovery requests the prosecution has stated:

Because payoffs were made *on several hundred complaints*, it was impractical to list each complaint in the indictment or in response to discovery motions. However, *by making each of the complaints available* to the defense for inspection, the defense has at their disposal the entire file from the Board of Appeals *concerning each complaint in which there was a payoff.*

Government's Mem. at 1–2 (emphasis added).

Plainly, the "hundreds" of complaints tendered to defendants in response to the discovery motions does not equal "over two thousand" cases alleged in the indictment. Moreover, the prosecution has failed to establish any basis for the $30 million figure in allegedly fraudulent property assessment reductions. There can be little doubt that,

as surplusage, paragraph 18 may be potentially prejudicial to the defendants. It overstates both the scope and result of the alleged fraud, and, by so doing, might possibly inflame the sentiments of the jury. Accordingly, defendants' motions to strike paragraph 18 of the indictment are granted.

## IV. MOTIONS FOR SEVERANCE.

All of the defendants in the instant prosecution have moved, either through their own memorandum or by adopting those of their co-defendants, to sever their trials pursuant to Rule 14, Fed.R.Crim.Pro. The defendants essentially have raised three arguments in support of their motions. First, each asserts in reliance on *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965), that they are entitled to a severance because the testimony of their co-defendants, if available to them, would tend to show that they were not guilty of the crimes charged in the indictment. Second, defendants submit that in this complex conspiracy case, without severance each runs the risk of conviction because the jury will be unable to segregate the evidence incriminating their co-defendants from the merits of their own defense. Finally, on the basis of the Supreme Court's holding in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), defendants claim that separate trials are required.

It is well-settled that motions to sever are directed to the discretion of the trial court, whose determinations will be reversed only for abuse. *United States v. Echeles, supra* at 896. It is the general rule in conspiracy cases such as the instant prosecution, that absent unusual circumstances, "persons jointly indicted should be tried together ..., particularly so where the indictment charges a conspiracy ... which may be proved against all the defendants by the same evidence and which results from the same or a similar series of acts." *United States v. Harris*, 542 F.2d 1283, 1312 (7th Cir. 1976), quoting, *United States v. Echeles, supra* at 896–97. Accordingly, in this context, defendants must bear the stringent burden of establishing that a joint trial will be prejudicial. As the Seventh

Circuit noted in *United States v. Tanner*, 471 F.2d 128 (7th Cir. 1972):

> "The defendant must show something more than the fact that 'a separate trial might offer him a better chance of acquittal.' ... Joinder must be shown to have rendered the trial unfair in order to counterbalance the Government's valid interest, as expressed in Rule 14, in avoiding a multiplicity of trials."

471 F.2d at 137, quoting, *Tillman v. United States*, 406 F.2d 930, 935 (5th Cir. 1969). Moreover, defendants' burden is especially strong here where the estimated length of a joint trial is approximately one month and separate trials could force the prosecution to repeat its proof up to eight times.

In the opinion of this court, defendants have failed to meet this burden. Defendants' reliance on *United States v. Echeles* is misplaced. In *Echeles*, the Seventh Circuit concluded that a joint trial of co-defendants was unfair when Echeles' co-defendant would almost certainly have offered critical exculpatory testimony had Echeles been granted a separate trial. Of great impact in *Echeles* were the certainty of the crucial import of the exculpatory testimony and the relative ease with which separate trials could have been conducted.

Although the *Echeles* case remains unchallenged, its application has been severely circumscribed by subsequent cases. In *United States v. Kahn*, 381 F.2d 824, 841 (7th Cir. 1977), the Court of Appeals stated:

> The unsupported possibility that such [exculpatory] testimony might be forthcoming does not make the denial of a motion for severance erroneous.

Similarly, in *United States v. Johnson*, 426 F.2d 1112, 1116 (7th Cir. 1970), the court concluded that "[t]here is no absolute requirement for severance when a defendant suggests that the testimony of co-defendants is not available to him unless they are tried separately."

The instant case is more akin to *Johnson* and *Kahn*, than *Echeles*. Here, nothing has been presented to the court, by way of affidavit or otherwise that might satisfy defendants' burden of demonstrating that

their co-defendants' testimony would be exculpatory, or that this testimony would be unavailable at a joint trial or that this testimony would be of critical importance to their defenses. *See e. g., United States v. Isaacs*, 493 F.2d 1124 (7th Cir. 1974); *United States v. Burke*, 495 F.2d 1226 (5th Cir. 1974). The mere assertions in defendants' motions and memoranda are insufficient to discharge their burden to demonstrate a need for severance.

The assertion that separate trials are required because of the amount and complexity of the government's proof is also meritless. A similar contention was addressed by Judge Roszkowski of this district in *United States v. Climatemp, Inc.*, 482 F.Supp. 376 (N.D.Ill.1979). He stated, in language which addresses the claims here:

> The contention that a case is too complex or confusing to a jury amounts to nothing more than an unfounded speculation that jurors disregard the clear instructions of the court in arriving at their verdict. *Opper v. United States*, 348 U.S. 84, 94–95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954).
>
> \* \* \* \* \* \*
>
> As to the contentions that the jury will transfer evidence or find guilt by association, the court feels that proper instructions to keep evidence separate will protect the defendants from prejudice.

*United States v. Climatemp, Inc.*, 482 F.Supp. at 386–87.

Finally, the doctrine of *Bruton v. United States, supra,* is no more available to defendants as a basis for severance than that of *Echeles*. While the Court notes that since defendants Battista, Balodimas and Valerugo gave potentially inculpatory statements to the government the possibility of potential Bruton problems exists here, once again defendants have presented no evidence to demonstrate that these statements could not appropriately be excised at trial or perhaps vitiated by exacting limiting instructions to the jury. *United States v. Craig*, 573 F.2d 455, 480 (7th Cir. 1977). Accordingly, defendants have failed to discharge their burden to overcome the interests of justice in trying these alleged joint conspirators together. As such, the motions for severances are denied.

■ In addition to their motions for separate trials, defendants Lavin, Erskine and Kelly, having been indicted for offenses other than the RICO violations and mail fraud (*i. e.,* perjury, obstruction of justice and income tax evasion), have moved to sever the trial of these subsidiary defenses. Although it is not contested that the offenses properly were joined in the indictment pursuant to Fed.R.Crim.Pro. 8(a), this court, in its discretion, may order separate trials. Fed.R.Crim.Pro. 14. *See also, United States v. Quinn*, 365 F.2d 256, 264 (7th Cir. 1966).

Insofar as the motions seek a severance of the perjury and obstruction of justice counts from the core allegations of the government's case, the motions are denied. These offenses are intimately tied to the alleged RICO conspiracy and the concomitant design to withhold knowledge and information of the scheme from law enforcement officials. As a result, there may be substantial overlap between the elements of those offenses and the proof to be adduced at trial. Therefore, there is a strong interest in denying a severance. *United States v. Zouras*, 497 F.2d 1115, 1121 (7th Cir. 1974).

■ The case against severance of the income tax evasion charges is, however, far less compelling. Although the income tax allegations may be, in some respects, related to the other alleged violations, a joint trial of all claims would require the jury to consider issues of the law of federal taxation related only to the specific defendant named in addition to the substantial task it now faces. There also is some risk that evidence of the conspiratorial misfeasance would spill over into the consideration of the tax charges. Accordingly, the motions to sever the tax counts from the other offenses at trial are granted.